## CHICAGO, B. & Q. R. CO. v. SMYTH, Atty. Gen., et al.

(Circuit Court, D. Nebraska. July 18, 1900.)

**1. STATUTES—EVIDENCE OF DUE ENACTMENT—NEBRASKA RULE.**

The decisions of the supreme court of Nebraska establish the rule that the due authentication and enrollment of a statute afford only prima facie evidence of its passage; that the legislative journals may be examined for the purpose of ascertaining whether a measure was enacted in the mode prescribed by the constitution, and, if the entries therein explicitly and unequivocally contradict the evidence furnished by the enrolled bill, such entries will control. Such rule, relating to the construction of constitutional and statutory provisions of the state, is binding on the federal courts.

**2. SAME—LEGISLATIVE JOURNALS AS EVIDENCE.**

To overturn the prima facie evidence afforded by an enrolled bill, it is not enough that the legislative journals do not show that the bill as enrolled passed, but they must affirmatively show that it did not pass.

**3. SAME—TITLE OF ACT.**

While it is not necessary that the journals of a legislative body should recite in full the title of an act, yet when they purport to do so they are presumed to recite the title correctly, and other evidence will not be received to impeach or contradict such recitals.

**4. SAME.**

Where the title of an act passed by the legislature is an essential part of the act, as where the state constitution requires the subject of every

act to be clearly expressed in its title, if the title of an act as passed is materially changed after its passage, and before its enrollment and approval by the governor, the act is invalid.

5. SAME—CHANGE OF TITLE BEFORE ENROLLMENT—NEBRASKA ACT CREATING BOARD OF TRANSPORTATION.

The act creating the Nebraska board of transportation, which was enrolled and signed by the governor as having been passed by the legislature at the session of 1887 as senate file 41, under the title, "An act to regulate railroads, prevent unjust discrimination, provide for a board of transportation, and define its duties, and repeal articles 5 and 8 of chapter 72, entitled 'Railroads,' of the Revised Statutes, and all acts and parts of acts in conflict herewith," is invalid; the journal showing that the bill was passed by the house under the title, "A bill for an act to repeal article 8 of chapter 72, entitled 'Railroads,' of the Second Edition of the Compiled Statutes of * * * Nebraska," and the title being, under the constitution, an essential part of the act.

6. SAME—TITLE OF ACT—CONSTITUTIONAL REQUIREMENTS.

Under Const. Neb. art. 3, § 11, which provides that "no bill shall contain more than one subject, and the same shall be clearly expressed in its title," a state board of transportation, with power to regulate and fix rates, cannot be created by an act shown by its title to be one merely for the repeal of a prior statute.

In Equity. On motion for preliminary injunction.

Woolworth & McHugh, for complainant
C. J. Smyth, Atty. Gen., for defendants.

MUNGER, District Judge. In 1885 the legislature of Nebraska passed an act creating a board of railroad commissioners, consisting of the attorney general, secretary of state, and auditor of public accounts, which afterwards became article 8, c. 72, entitled "Railroads," of the Compiled Statutes of the state. The legislature in 1887 passed an act which, as shown by the enrolled bill signed by the governor and filed with the secretary of state, bears the following title:

"An act to regulate railroads, prevent unjust discrimination, provide for a board of transportation, and define its duties, and repeal articles 5 and 8 of chapter 72, entitled 'Railroads,' of the Revised Statutes, and all acts and parts of acts in conflict herewith."

By this enactment a board of transportation was created, consisting of the attorney general, secretary of state, auditor of public accounts, state treasurer, and commissioner of public lands and buildings. They were invested with certain powers, enabling them to determine and fix reasonable rates for the transportation of property within the state. The said board having made certain orders applying to the complainant's road within the state, complainant brings this action to enjoin any attempted enforcement of such order, alleging as grounds therefor that the said legislative enactment of 1887 creating said board is invalid, for the reason that the same was not passed by the legislature in the manner as required by the constitution of the state. Upon the issues as framed, the single question is presented as to the validity of said act. If the title thereof was adopted by the legislature as provided by the constitution, then complainant is not entitled to the temporary order of injunction now sought. If the title thereof was not passed by the legislature in the manner required by the constitution, then complainant is entitled to a temporary order of injunction.

A history of the act, as shown by the journals of the two houses of the legislature, is, in brief, as follows: Senate file No. 41, as introduced in the senate, was entitled, "A bill for an act to repeal article 8 of chapter 72, entitled 'Railroads,' of the Second Edition of the Compiled Statutes of the State of Nebraska." This title will hereafter, for convenience, be designated as title No. 1. This bill was read a first and second time, referred to and reported by the several committees by title No. 1. During its progress through the senate various amendments to the bill were adopted, until the final passage, when the journal recites senate file No. 41, "A bill," etc. (title No. 1), was read the third time. Thereupon the roll was called upon the passage of the bill, and 19 senators voted in the affirmative, and 13 in the negative. "A constitutional majority having voted in the affirmative, the bill was passed, and the title agreed to as amended." The next step in the proceedings is found in the house journal, reciting: "Message received from the senate notifying the house that the senate had passed senate file No. 41, 'A bill,'" etc. (title No. 1). The journal of the house shows that this bill was read the first time, and ordered to a second reading by the title, "A bill for an act to regulate railroads, prevent unjust discrimination, provide for a board of transportation, and define its duties, and repeal articles 5 and 8 of chapter 72, entitled 'Railroads,' of the Revised Statutes, and all acts and parts of acts in conflict herewith," which title, for convenience, will hereafter be designated as title No. 2. The bill, by title No. 2, was read the second time, and referred to the committee on railroads. The committee on railroads reported the bill by title No. 2, with a majority and minority report. After consideration by the house, the bill came on for a third reading and final passage, when the journal recites that senate file No. 41, "A bill for an act," etc. (title No. 1), was read the third time and put upon its passage. The ayes and nays being called, 64 members voted in the affirmative; 28 in the negative; 8 absent and not voting. The journal recites, "A constitutional majority having voted in favor of the passage of the bill, the bill passed and the title was agreed to." The next step in the proceedings, as shown by the journals, was a message from the house notifying the senate that the house had passed senate file No. 41, "A bill for an act," etc. (title No. 1). The house journal recites: "The speaker gave notice of and signed, in the presence of the house, while capable of transacting business, the following: * * * Senate file No. 41, 'A bill,'" etc. (title No. 1). The house journal further shows that the joint committee on engrossed and enrolled bills reported they had presented to the governor senate file No. 41, "A bill," etc. (title No. 2). In the senate journal we find that the committee on engrossed and enrolled bills reported that they had examined and compared senate file No. 41, "A bill," etc. (title No. 2), and found the same correctly enrolled. The senate journal then recites: "At 10:45 o'clock a. m., in the presence of the senate, the president pro tem. signed senate file No. 41, 'A bill,' etc. (title No. 1)." The senate committee on engrossed and enrolled bills subsequently reported that they presented to the governor, for his approval and signature, senate file No. 41, "A bill," etc. (title No. 2).

Upon this evidence we are called upon to determine whether the act in question is valid. The following rules are to guide us in this determination: (1) In determining the validity of a legislative enactment, the supreme court of Nebraska, in repeated decisions, have held that the due authentication and enrollment of a statute afford only prima facie evidence of its passage; that the legislative journals may be examined for the purpose of ascertaining whether a measure was enacted in the mode prescribed by the constitution, and, if the entries found in such journals explicitly and unequivocally contradict the evidence furnished by the enrolled bill, the former will prevail. Webster v. City of Hastings, 59 Neb. ——, 81 N. W. 510, and cases cited. (2) Such decisions are not matters of general law relating to evidence, but are constructions of constitutional and statutory provisions of the state, and are binding on the federal court. Town of South Ottawa v. Perkins, 94 U. S. 260, 24 L. Ed. 154. (3) To overturn the prima facie evidence afforded by the enrolled bill, it is not enough that the journals do not show that the bill as enrolled passed, but the journals must affirmatively show that the bill did not pass. (4) While it is not necessary that the journals of the legislative body should recite in full the title of the act, yet when they purport so to do they are presumed to recite the title correctly, and other evidence will not be received to impeach or contradict such recitals. 23 Am. & Eng. Enc. Law, 211, 212. (5) If the title of an act as passed by the legislature is materially changed after its passage, and before its enrollment and approval by the governor, the act is invalid.

Does the evidence thus afforded by the journals affirmatively show that title No. 2 did not pass both houses of the legislature? This involves an inquiry as to the relation which the title of a bill sustains to the bill itself. The constitution of this state (section 10, art. 3) provides:

"That no law shall be enacted except by bill; no bill shall be passed unless by assent of a majority of all the members elected to each house of the legislature, and the question upon final passage shall be taken immediately upon its last reading, and the yeas and nays shall be entered upon the journal."

In section 11 of said article it is provided:

"No bill shall contain more than one subject, and the same shall be clearly expressed in its title. * * * The presiding officer of each house shall sign, in the presence of the house over which he presides, while the same is in session and capable of transacting business, all bills and concurrent resolutions passed by the legislature."

Here we have mandatory provisions of the constitution requiring every legislative enactment, to become a valid law, to have the assent of a majority of the members elected to each house of the legislature, and the journal of each house is required to show such assent by an entry of the yeas and nays upon the final passage. It is the assent of the majority of the members of each house to the entire bill, and not to some sections or portions of the bill, that is required to be entered by yea and nay vote on the journal. Again, it is required that the bill shall contain no more than one subject, and the same shall be clearly expressed in its title. This clearly implies that every bill shall have a title, and that no law is valid unless the bill there-

for has a title. That being so, it clearly follows that the title is a part of the essentials of the bill, within the meaning of the constitution. This is made clear when we consider the object and purpose of this constitutional provision. In Cooley, Const. Lim. (6th Ed.) p. 169, it is said:

"The title of an act was formerly considered no part of it; and although it might be looked to as a guide to the intent of the lawmakers, when the body of the statute appeared to be in any respect ambiguous or doubtful, yet it could not enlarge or restrain the provisions of the act itself, and the latter might, therefore, be good when it and the title were in conflict. * * * Titles to legislative acts, however, have recently, in some states, come to possess very great importance, by reason of constitutional provisions which not only require that they shall correctly indicate the purpose of the law, but which absolutely make the title to control, and exclude everything from effect and operation as law which is incorporated in the body of the act, but is not within the purpose indicated by the title."

The supreme court of this state, in White v. City of Lincoln, 5 Neb. 505, speaking through Maxwell, J., say:

"The object of the constitutional provision that 'no bill shall contain more than one subject, which shall be clearly expressed in its title,' is to prevent surreptitious legislation by incorporating into a bill obnoxious provisions which have no connection with the general object of the bill, and of which the title gives no indication;" and quote with approval from the opinion in People v. Mahaney, 13 Mich. 494, the following: "The practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislator and dangerous to the state. It was scarcely more so, however, than another practice, also intended to be remedied by this provision, by which, through dexterous management, clauses were inserted in bills of which the titles gave no intimation, and their passage secured through legislative bodies whose members were not generally aware of their intention and effect."

Such being the object and purpose of the constitutional provision in question, it logically follows that a valid law could not be enacted by the passage by the legislature of a bill having no title, and afterwards affixing one thereto. This is shown by the supreme court in Webster v. City of Hastings, 59 Neb. ——, 81 N. W. 510, writing by Sullivan, J., in which it is said:

"One of the contentions of counsel for the plaintiff is that the act in question is void because its present title is substantially different from the title under which it passed the legislature. Without giving in detail the history of the measure as disclosed by the legislative journals, and taking no account of an obvious clerical mistake, it may be said that the bill, during its entire progress through the house and senate, and up to the time of its enrollment, was invariably designated and referred to as 'A bill for an act to amend sections one (1), two (2), three (3), and four (4) of chapter sixteen (16) of "An act entitled an act to provide for the organization, government and powers of cities of the second class having more than ten thousand inhabitants," approved March 1, 1883.' The present title of the act, namely, 'An act to amend the title and sections one (1), two (2), three (3) and four (4) of an act entitled 'An act to provide for the organization, government and powers of cities of the second class having more than ten thousand inhabitants,' approved March 1, 1883, is first mentioned in the report of the house committee on engrossed and enrolled bills, announcing the enrollment of the measure. That the title was changed by inserting therein the words 'the title and' after the bill had passed the legislature, and while it was being prepared for the signature of the executive, is a conclusion that can-

not be avoided without disregarding entirely the evidence of the legislative journals. This, under what is now the settled doctrine of this court, we cannot do. The rule established by our former decisions is that the due authentication and enrollment of a statute afford only prima facie evidence of its passage, and that the legislative journals may be examined for the purpose of ascertaining whether the measure was enacted in the mode prescribed by the constitution. If the entries found in the journals explicitly and unequivocally contradict the evidence furnished by the enrolled bill, the former will prevail. The journals, being the records of the legislative proceedings kept in obedience to the command of the constitution, are considered the best evidence of what affirmatively appears in them regarding the enactment of laws."

This pronouncement by Judge Sullivan in effect says that the bill had a title when it passed the legislature, which title was materially changed after the passage of the bill and while it was being enrolled for the signature of the governor; that by reason of such change the statute was invalid. In other words, that when the legislative journals show that a bill, at the time it is passed, has a certain title, such bill, when enrolled and presented to the executive for his signature, must retain the same title.

I am referred to the cases of Larrison v. Railroad Co., 77 Ill. 11, Attorney General v. Rice, 64 Mich. 385, 31 N. W. 203, and Cotting v. Stock-Yards Co. (C. C.) 82 Fed. 839, as holding a contrary rule. If they do, they are, to my mind, in conflict with the decisions of the supreme court of this state, which are the guide for this court.

In Larrison v. Railroad Co., senate file No. 453, for "An act to incorporate the Peoria, Atlanta and Danville Railroad Company," was introduced, read the first and second times, and referred to the committee on railroads. The bill was reported back from the committee as "An act to incorporate the Peoria, Atlanta and Decatur Railroad Company," with the recommendation that it pass as amended. The bill entitled as thus amended was read the third time, and regularly passed. The contention in the case was that the change in the title by substituting the word "Decatur" for the word "Danville," and the amendments in the body of the bill, rendered it a new and distinct bill, or, as said by the court:

"The objection taken is that there were two bills of the same number, but of different titles; that one was regularly introduced, twice read, and referred to the appropriate committee, and that a member of the same committee reported back another bill of the same number; that the act under which the company claims was but once read before its passage. If this position is true, then the bill failed, for a want of compliance with constitutional requirements, to become a law."

Then, after showing that there was but one bill, which was amended in committee, the court further say:

"The constitution does not require bills to be entitled, but that is done as a means of identification. If a bill were introduced without a title, and regularly passed, and the title then adopted, we are unable to see that there would be any constitutional objection to such a law for that reason. The title to a bill is usually adopted after it has passed the house, and is not an essential part of the bill, although it is of a law."

This language of the court is presented for my consideration in support of the proposition that the title is no part of the bill; that a bill may be passed without a title, and a title subsequently adopted

by the legislature. Such I do not think the law. The very object of the constitutional provision requiring every bill to have a title would be defeated by such a construction. Such is not the law in this state, as announced by the supreme court in the decisions referred to. This language of the supreme court of Illinois is mere obiter. The expression was doubtless correct as applied to bills of a general nature, as the act there in question was passed under the constitution of that state adopted in 1848, which contained no provision requiring bills of a general nature to have a title, or to contain no more than one subject. To say that under the constitution of Nebraska the title is no part of the bill, and may be adopted by the legislature subsequent to the passage of the bill, and without the same formalities required in the passage of the bill itself, is in effect to hold that, after the passage of a bill by the majority elected to membership in the body, a minority of the members may subsequently, when constituting the majority of a quorum, adopt a title foreign to the object and purpose of the bill, thus rendering the act invalid, and thereby defeat the expressed action of a majority.

Attorney General v. Rice, 64 Mich. 385, 31 N. W. 203, involved a construction of the constitutional provision of that state providing that no new bill should be introduced after the first 50 days of the session. The facts were that during the first 50 days of the session a bill was introduced to organize the township of Au Train. While said bill was pending, and after the expiration of 50 days, a substitute was offered; the substitute being a bill to organize the township of Ironwood, in the county of Ontonagon. It was urged that the substitute, being an entirely new bill, was invalid, because it first appeared after the 50 days of the session. It was urged on the part of the attorney general that the constitution was violated in its spirit, because the title of the bill as introduced did not express the object of the act as passed. The court said:

"We cannot extend the provisions of the constitution beyond its express terms in this respect. If the object of the act as passed is fully expressed in its title, the form or status of such title at its introduction, or during any of the stages of legislation before it becomes a law, is immaterial. To hold otherwise would in many cases prevent any alteration or amendment of a bill after its introduction, as in legislative practice it frequently becomes necessary to amend the title as introduced in order to conform to changes in the bill."

There was no question in that case of any change in the title of the bill as passed and the bill as enrolled, the court simply holding that it was competent for the legislature to amend, not only the body of a bill, but the title, during its progress through the body. True it is, the court in that same case quote from Larrison v. Railroad Co., the following:

"The title to a bill is usually adopted after it has passed the house, and is not an essential part of the bill, although it is of a law."

The constitution of Michigan requires every bill to be read three times in each house before the final passage thereof; that no bill shall become a law without the concurrence of a majority of all the members elected from each house, and on the final passage of all bills the vote shall be taken by yeas and nays and entered on the

journal. The constitution does not require that every bill shall have the object thereof expressed in its title. The constitutional provision is, "No law shall embrace more than one object, which shall be expressed in its title" (article 4, § 20); and the court may well have construed that provision to mean that the title "is not an essential part of the bill, though it be of a law."

In Cotting v. Stock-Yards Co. (C. C.) 82 Fed. 839, the late Judge Foster says:

"Without reference to the oral testimony of members of the legislature as to what was done by that body in its proceedings touching this law, and adopting this title, we find from the house journals that house bill No. 87, 'An act to regulate stock yards, and providing punishment for the violation thereof,' was introduced on January 15, 1897, and referred to the committee on live stock. On February 3d the chairman of that committee reported the bill back to the house, with a substitute. From that time forward this substitute is described in the journals as 'substitute for house bill No. 87, an act to regulate stock yards, and providing punishment for the violation thereof.' This substitute was finally passed, and its title, as published, appears for the first and only time in the journal in the report of the committee on enrolled bills. The engrossed and enrolled bills both bear the title as published. It seems that the title, wherever it is used in connection with house bill 87, was the title of the original bill, and not of the substitute; and all that we know of the substitute or of its title is that it was a substitute for 'house bill 87, an act to regulate stock yards,' etc. The chief object of numbering bills is to identify them. There is nothing in the constitution or laws requiring the journals to disclose the title of any bill. All the legislative proceedings could have been had on this substitute, and its identity preserved, by simply calling it, 'Substitute for House Bill No. 87.' When the title of this act does appear in the journals, it is in the words of the act as enrolled and published in the official paper and chapter 240 of the Session Laws. It seems to me, this is sufficient."

This does not in any respect conflict with the view I have expressed. Judge Foster expressly finds that the journals did not attempt to show what the title of the substitute was, but that the journal showed that there was a substitute for house bill 87, further describing house bill 87 by its original title, but that the journal did not purport to show that the title thus used in describing house bill 87 was the title which the substitute bore. I have no doubt that it is sufficient for the journal to describe a bill by its number, and that it is not essential that the journal should contain either the body or the title of the bill; but, whenever the journal does undertake to recite the body of the bill or the title, such recital in the journal is conclusive evidence of the correctness thereof. 23 Am. & Eng. Enc. Law, 211, 212.

In the present case the journal of the house, in clear, explicit, and unambiguous terms, states that the title of senate file No. 41 upon the passage of the bill through the house was, "A bill for an act," etc. (title No. 1). If the title of the bill be no part thereof, and may be adopted after the passage of the bill, we have the recital in the journal immediately after the recording of the yeas and nays that, "a constitutional majority having voted in favor of the passage of the bill, the bill passed and the title was agreed to." Which title is here referred to? Clearly, the title which the bill had at the time of its passage, immediately preceding the statement that the title was agreed to. It is urged, however, that the statements entered in the journal, when considered as a whole, leave it so uncertain as to which title was

adopted that the evidence afforded by the journal is insufficient to overcome the prima facie evidence which the enrolled bill establishes. This is urged: First, because the bill in report of committees, and on the first and second readings, had another and different title than the one shown on its final passage. That this is not sufficient is held in Re Granger, 56 Neb. 260, 76 N. W. 588. And, second, because the bill as enrolled for the signature of the governor had the title, "An act," etc. (title No. 2). Such was the case in Webster v. City of Hastings. It is the title of the bill which is adopted by the legislature that controls, not the title by which the bill may have been introduced, or which it may have in reports of committees, or as enrolled.

The journal showing that the bill as enrolled and signed by the governor did not pass the house, it only remains to determine the effect thereof. That the creation of a board of transportation, with power to regulate and fix reasonable rates for the transportation of commodities, could not be had under a bill the title of which was one simply to repeal an existing law, needs no argument or citation of authorities. It follows from the foregoing that the board of transportation has no legal existence, and the temporary injunction prayed is granted.