THE STATE ex rel. BUCHANAN COUNTY, Appellant, v. JOHN F. IMEL, Judge of Probate Court.

In Banc, April 23, 1912.

1. **COUNTY OFFICERS: Probate Judges: Constitutional Provision.** Section 12 of article 9 of the Constitution, declaring that "the General Assembly shall, by law uniform in its operation, provide for and regulate the fees of all county officers, and for this purpose, may classify the counties by population," does not include probate judges; and for two reasons: first, the words "county officers" in a restricted and precise sense mean the officers by whom the county performs its usual political functions of government, and a probate court does not perform any governmental functions, but its functions are judicial and are to administer the laws pertaining to the estates of deceased persons, minors and persons of unsound mind; and, second, the section is found in the article of the Constitution entitled "Counties, Cities and Towns," and relates to those things only, and nothing is found therein referring to probate judges, their duties or compensation; and applying the rule that the meaning of words in a statute or constitution is to be ascertained by an examination of its context, it is apparent that the words "county officers" were not intended to include probate judges. [Overruling Henderson v. Koenig, 168 Mo. 356.]

*Held,* by WOODSON, J., dissenting, (1) that a probate judge is a part of the government, and to declare him not to be a county officer is in effect to make him a State officer, and in effect also to hold that sheriffs, circuit clerks and justices of the peace are not county officers; and (2) that it has been the universal opinion of the bench and bar for almost a century that probate judges were county officers.

State ex rel. v. Imel.

2. ————: ————: Fees and Compensation: Constitutional Statute: Sec. 10695, R. S. 1909. Section 10695, Revised Statutes 1909, requiring each probate judge to keep a true and correct account of all fees annually earned and collected by him and that "whenever, after deducting all reasonable and necessary expenses for clerk hire, the amount of fees collected in any one calendar year by or for any one probate judge, during his term of office and irrespective of the accrual of such fees, shall exceed a sum equal to the annual compensation provided by law for a judge of the circuit court having jurisdiction in such county, then it shall be the duty of such probate judge to pay such excess less ten per cent thereof" into the treasury of the county, for the benefit of the school fund, is constitutional. [WOODSON and GRAVES, JJ., dissenting.]

3. ————: ————: ————: ————: ————: Title: To Repeal Existing Section. The title of a bill which is "An Act to repeal section 3240, chapter 27, article 1, of the Revised Statutes of 1899, relating to fees; and to enact a new section in lieu thereof, to be known as section 3240," complies with section 28 of article 4 of the Constitution, requiring the subject of each bill to be clearly expressed in its title. The title to a bill which designates and repeals a certain section of the Revised Statutes is ample notice to members of the General Assembly that the new section enacted in lieu thereof would deal with the same subject; besides, the said title contained a recital that the new section would relate to fees.

4. ————: ————: ————: ————: ————: ————: Salaries and Fees. The subject of salaries is germane to the subject of fees, and it is entirely competent for the General Assembly under the title of a bill relating to the fees of probate judges to provide for paying them a salary out of their fees and requiring that part of their fees in excess of an ascertainable amount to be paid into the county treasury to the credit of the school fund. [WOODSON, J., dissenting.]

5. ————: ————: ————: ————: ————: Estoppel: Accepting Office and Collecting Fees Prescribed by Statute: Excess. A probate judge who accepts an office under an existing statute requiring that the excess of the fees collected by him shall be paid into the public treasury and who assumes to act under the law in collecting fees, is estopped to dispute the validity of that part of the same law which requires him to pay the excess into the county treasury. He cannot treat as valid that part of the law under which the money was collected and dispute the validity of that part of the same law which prescribes how the fees collected shall be disbursed.

    *Held*, by WOODSON, J., dissenting, (1) that the right of the probate judge to fees was created by one law, and the provision requiring him to pay into the county treasury the

excess of fees above an ascertainable amount was a subsequent enactment, and the two are separable, and when a legal right is created by a valid law that right cannot be taken away by an unconstitutional act; (2) that the rule of estoppel applies only when the act is void *in toto*, in which case the officer must repudiate it *in toto*, and cannot be heard to claim the benefits of the void act while refusing to submit to the burdens imposed by it; (3) there was no agreement by respondent to pay over the excess of fees imposed by the void act, and no such agreement can be implied from his acceptance of the office and the filing of his bond; and (4) the invalid part of section 10695 can be separated from the rest and be held to be void, and the balance relating to the fees which the probate judge may collect for his services be sustained.

6. ———: ———: ———: ———: **Sale of Justice: Not Pleaded.**
A contention that the law which prescribes fees as the compensation for the services of probate judges and requires them to pay the excess above an ascertainable amount into the county treasury, amounts to "a sale of justice" and is therefore in conflict with that part of the Constitution which declares that justice shall be administered "without sale, denial or delay," cannot be considered unless the issue is made a part of the pleadings.

*Held,* by WOODSON, J., dissenting, that the Legislature has no right or power to authorize the taxation and collection of unreasonable or excessive court fees, and a statute which authorizes such taxation is unconstitutional and void, and amounts to a sale of justice; and a statute which authorizes the imposition of certain fees as compensation for services of the probate judge, allows him to retain a certain portion thereof and requires him to pay the excess into the public treasury, being in effect a legislative authorization to charge more for his services than they are worth, is such a statute, and is void as a sale of justice.

Appeal from Buchanan Circuit Court.—*Hon. L. J. Eastin,* Judge.

REVERSED (*with directions*).

*C. C. Ferrell* for appellant.

(1) All enactments of the Legislature are presumed to be constitutional until the contrary is made clearly to appear. For this reason the burden rests

upon the respondent to point out and make clear to this court that said act is violative of the Constitution. State ex rel. v. Williams, 232 Mo. 2; State ex rel. v. Mason, 153 Mo. 49; State ex rel. v. Switzler, 143 Mo. 317.    (2)    If said law of 1905 is unconstitutional, respondent waived his right to take advantage of it by giving a bond under its provisions, thereby declaring his intention to accept it.    When he gave such bond, he agreed with the county to accept said law, as the rule by which he and the county should determine their respective rights.    This suit is upon that agreement, namely, upon respondent's bond.    There are no reasons of public policy demanding this law to be declared unconstitutional, but an individual is asking it to further his property interests.    Henderson v. Koenig, 192 Mo. 690; Stiepel v. Life Assn., 55 Mo. App. 233; State ex rel. v. Messerly, 198 Mo. 351; Merrill v. St. Louis, 83 Mo. 251; Williams v. Railroad, 153 Mo. 519; Bishop on Contracts (1888), sec. 792.

*George P. Webster, C. C. Crow* and *Vinton Pike* for respondent.

(1)    The Act of 1905, now section 10695, violates section 12 of article 9 of the Constitution.    (a)    The only classification authorized is one based upon the population of counties, while the act itself classifies probate judges, or the compensation to be received by them, on other conditions.    The maxim *expressio unius est exclusio alterius* is applicable to constitutions as well as to statutes.    Cooley, Const. Lim. (6 Ed.), pp. 78 and 93; Page v. Allen, 58 Pa. St. 338; People v. Draper, 15 N. Y. 544; Railroad v. Railroad, 130 U. S. 25; Henderson v. Koenig, 168 Mo. 369; Ex parte Arnold, 128 Mo. 264.    The permissive classification according to population of counties was, therefore, a specific prohibition against any other classification. A probate judge is a county officer.    Henderson v.

Koenig, 168 Mo. 356. (b) The constitutional com-
mand is that the compensation shall be regulated by a
law uniform in its operation, but this act is not uniform
in its operation because it does not work out uniform-
ly in the several counties, owing to the differing
amounts received as salaries by circuit judges, and
the varying amount of fees earned in the several pro-
bate courts. It is subject to constant fluctuation, be-
cause every legislature and every county court can
change the salary of a circuit judge. The word
"operation," as used in this portion of the Constitu-
tion means "working out." Crabb, Eng. Syn., p. 35;
March, Thesaurus Dic., Title "Action-Effect;" Cen-
tury Dic., Title "Operation;" Anderson's Law Dic., p.
734; Geebrick v. State, 5 Iowa, 496; Little Rock v. Par-
rish, 36 Ark. 166. The effect of the statute must be
uniform upon the subject-matter. It cannot operate
upon the main subjects in one part of the State differ-
ently than it operates upon the same subjects in other
parts of the State. The law must operate uni-
formly upon the subject-matter in every part of the
State, and only when it does that will it comply with
this provision of the Constitution. State v. Nelson,
52 Oh. St. 88; Railroad v. Barnes, 2 N. D. 310; State
ex rel. v. Herrmann, 75 Mo. 340; State v. Julow, 129
Mo. 163. (2) The Act of 1905 is unconstitutional and
void for failure to conform to the requirements
of section 28 of article 4 of the Constitution. The
title of the Act of 1905 was simply "An Act to repeal
section 3240, chapter 27, article 1, of the Revised Stat-
utes of 1899, and to enact a new section in lieu thereof,
to be known as section 3240." But the act itself simply
reenacted old section 3240, which provided the scale of
fees to be charged and concerned only the probate
judge and the persons having business in his court,
and then added to it a proviso regulating the disposi-
tion of the fees diminishing the judge's compensation,
and creating a revenue for the school fund of the coun-

ties, without any mention of these purposes in the title. For this reason the act is void. Williams v. Railroad, 233 Mo. 666; Mobile v. Railroad, 124 Ala. 132; People v. Curry, 130 Cal. 82; Pratt v. Brown, 135 Cal. 649; Crowther v. Ins. Co., 85 Fed. 41; Equitable Co. v. Donohoe, 49 Atl. 372; Henderson Co. v. Alves, 122 Ky. 46; State v. S. R. Co., 106 La. 553; Stiefel v. May Ins., 61 Md. 144; Bank v. Auditor, 123 Mich. 511; Railroad v. Sprague, 69 Neb. 48; State v. Sullivan, 73 Minn. 378; Railroad v. Smythe, 103 Fed. 376; State v. Railroad, 115 Ala. 250; Hann v. Bedell, 67 N. J. L. 148. No member of the General Assembly reading this title would be struck with the idea that the new act was, in addition to the scope of the old act, to change the disposition of the fees charged, to limit the compensation of the judge and to provide a revenue for the school fund.

BROWN, J.—The object of this suit is to determine the constitutionality of that part of section 10695, Revised Statutes 1909, which provides that each probate judge in this State shall keep a true and correct account of all fees annually earned and collected by him, and "that whenever, after deducting all reasonable and necessary expenses for clerk hire, the amount of fees collected in any one calendar year by or for any one probate judge in any county in this State, during his term of office, and irrespective of the date of accrual of such fees, shall exceed a sum equal to the annual compensation provided by law for a judge of the circuit court having jurisdiction in such county, then it shall be the duty of such probate judge to pay such excess less ten per cent thereof, within thirty days after the expiration of such year, into the treasury of the county in which such probate judge holds office, for the benefit of the school fund of such county."

State ex rel. v. Imel.

The plaintiff in his petition alleges that defendant, while acting as probate judge of Buchanan county during the year 1907, collected fees aggregating the sum of $5557.68; that after deducting from the fees so collected a salary equal to the salary of the circuit judge of Buchanan county and all necessary clerk hire and also ten per cent of the remainder of said fees, there was due from said defendant to Buchanan county a balance of $926.18, for which judgment was prayed, with six per cent interest from January 1, 1908.

Plaintiff also alleges that defendant as such probate judge, during the year 1908, collected fees aggregating the sum of $6675.30; that after deducting therefrom a salary equal to the salary of the circuit judge of Buchanan county, and all necessary clerk hire, and also ten per cent of the remainder of said fees, there was due to Buchanan county a balance of $1500, for which plaintiff prayed judgment, with interest at six per cent from January 1, 1909.

The defendant admitted the collection of fees in the amount and manner charged in plaintiff's petition and deposited in court the sum of $2426.18, being the amount claimed by the plaintiff; and pleaded that said section 10695, supra, in so far as it requires defendant to pay a part of his fees into the county treasury, is unconstitutional and void, and prayed the court to determine the constitutionality of said section, and order the fees so deposited, returned to him.

The court below gave judgment for the defendant on the ground that so much of section 10695, Revised Statutes 1909, as requires probate judges to pay over to county treasurers a part of the fees received by them, is in conflict with section 12 of article 9 of our State Constitution, which reads as follows: "The General Assembly shall, by a law uniform in its operation, provide for and regulate the fees of all county officers, and for this purpose, may classify the counties by population."

In the case of Henderson v. Koenig, 168 Mo. 356, this court held that the words "county officers," as used in the foregoing section of the Constitution, include probate judges; and in that case we also held that a statute which attempted to place probate judges in cities of 300,000 inhabitants upon a salary, and required their clerks to collect the fees earned by such judges and pay the same into the city treasury, was unconstitutional.

Almost the same issue arises again in this case; and it becomes necessary for us to reexamine the contruction placed upon said section 12 of article 9 of the Constitution in the Henderson case, supra, and determine whether or not in this case we will follow the rules of law announced in that case.

The rule announced in the Henderson case depends for its correctness almost entirely upon the proper construction to be placed upon the words "county officers," as used in the aforesaid section of our organic law.

The words "county officers" have two well defined meanings. In their most general sense, they apply to officers whose territorial jurisdiction is coextensive with the county for which they are elected or appointed. In a more precise and restricted sense, those words mean officers "by whom the county performs its usual political functions, its function of government." [Sheboygan County v. Parker, 70 U. S. 93, l. c. 96.]

The Constitution of Tennessee contains a provision that "no county office created by the Legislature shall be filled otherwise than by the people or by the county court." In State ex rel. v. Glenn, 54 Tenn. (7 Heisk.) 489, it was held that the above quoted clause of the Constitution did not include county judges because they are *judicial* officers. That as county judges in Tennessee possess jurisdiction to try certain classes of civil actions between individuals, they

did not come under the classification of county of-
ficers, and therefore the Governor was authorized
to fill a vacancy in that office by appointment.

"The established rules of construction ap-
plicable to statutes also apply to the construction of
Constitutions." [8 Cyc. 729.] One of the established
rules for construing statutes is to examine closely the
context of the act where the words to be construed oc-
cur, and thereby ascertain what meaning they were in-
tended to convey. [Riggs v. Railroad 120 Mo. App.
335, l. c. 340; State v. Snyder, 182 Mo. 462, l. c. 500.]

Applying this rule in the case at bar, we observe
that said section 12 of article 9 of our Missouri Con-
stitution, declaring that all laws regulating the fees of
"county officers" shall be uniform in their opera-
tion, is not found in that article of the Constitution
which creates and prescribes the duties and jurisdic-
tion of probate judges; but is part of article 9, en-
titled "Counties, Cities and Towns."

In this last named article (9), nothing is found
specifically referring to probate judges, their duties or
compensation; but instead, that article treats of the
organization and change of boundaries of counties,
cities and townships (sections 1 to 9), the offices of
sheriff and coroner (sections 10 and 11), a limitation
on the fees of *executive and ministerial officers of
counties and municipalities* (section 13), the creation
of new county, township and municipal officers by the
General Assembly (section 14), and other provisions
for the government and consolidation and enlargement
of cities. In this article we would not expect to find
any provision respecting or affecting the judiciary of
the State.

Judges of the probate court are not charged with
the performance of any governmental functions of
the counties for which they are elected; in fact, some
of them do not have jurisdiction coextensive with the
counties where their offices are held. Their functions

are to administer the laws pertaining to estates of deceased persons, minors and persons of unsound mind.

From the context of said section 12 of article 9, supra, it will be seen that there is very little if any better reason for classifying probate judges as ''county officers'' than for so designating judges of the circuit court when their circuits are composed of a single county.

After a careful review of said section 12 of article 9 of the Constitution of Missouri, we are fully convinced that it was not intended to embrace or include judges of probate courts; and that in holding that it does embrace those officers, the case of Henderson v. Koenig, supra, is erroneous, and the same is therefore overruled.

The second contention of defendant is that the title of the bill under which section 10695 was enacted did not conform to section 28 of article 4 of our State Constitution, requiring the subject of each bill to be clearly expressed in its title.

The title to said bill is as follows: ''An Act to repeal section 3240, chapter 27, article 1, of the Revised Statutes of 1899, relating to fees; and to enact a new section in lieu thereof, to be known as section 3240.'' Defendant cites and relies upon: State v. Great Western Tea and Coffee Co., 171 Mo. 634; Williams v. Railroad, 233 Mo. 666; State v. Parker D. Co., 237 Mo. 103; Mobile v. Railroad, 124 Ala. 132; Pratt v. Browne, 135 Cal. 649; People v. Curry, 130 Cal. 82; Crowther v. Fid. Ins., etc. Co., 85 Fed. 41; Equitable G. & T. Co. v. Donahoe, 3 Penn. (Del.) 191, 49 Atl. 372; Henderson B. Co. v. Alves, 122 Ky. 46; State v. Am. S. R. Co., 106 La. 553; Steifel v. Maryland Inst., 61 Md. 144; Citizens Sav. Bank v. Auditor, 123 Mich. 511; Union Pacific Ry. Co. v. Sprague, 69 Neb. 48; State v. Sullivan, 73 Minn. 378; C. B. &. Q. Ry. Co. v.

Smyth, 103 Fed. 376; State v. Railroad, 115 Ala. 250; Hann v. Bedell, 67 N. J. L. 148.

The cases cited do not sustain defendant's contention.

It is scarcely necessary for us to cite authorities on the point that the title to a bill which designates and repeals section 3240, Revised Statutes 1899, was ample notice to the members of the General Assembly that the new section enacted in lieu of section 3240, supra, would deal with the same subject contained in the repealed section, to-wit, fees and compensation of probate judges; and no reasonable legislator could have been misled by said title into believing that the new section would contain only the same provisions as the repealed section.

When a section is repealed and re-enacted, there is invariably some change made in the old law. The title to the bill under consideration, by referring to the old section fixing fees of probate judges and containing also a further recital that the new law *related to fees,* was broad enough to give notice of any change to section 3240 (now Sec. 10695, R. S. 1909) which the Legislature saw fit to make, so long as said amendment related in any manner to the fixing, collection or distribution of fees of probate judges. [State ex rel. v. County Court, 128 Mo. 427; State ex rel. v. Heege, 135 Mo. 112.]

Salaries are a form of compensation prescribed for paying public officers and others for their services. It takes the place of and produces very much the same result as paying fees to public officers for their services. We therefore hold that the subject of salaries is germane to the subject of fees, and it was entirely competent for the General Assembly under the title to the bill under consideration to provide for paying probate judges a salary out of their fees and requiring part of their fees to be paid into the public

treasury to the credit of the school fund. [State ex rel. v. Mead, 71 Mo. 266; State ex rel. v. Miller, 100 Mo. 439; Lynch v. Murphy, 119 Mo. 163; Ferguson v. Gentry, 206 Mo. 189; State ex rel. v. Vandiver, 222 Mo. 206; State v. Bixman, 162 Mo. 1.]

In the Bixman case, supra, the validity of the beer inspection law was assailed on the ground that its title did not indicate that it was intended to be a revenue measure for the purpose of replenishing the State Treasury; and in fact, the title of the bill did not indicate how the fees of the beer inspector were to be disposed of; neither did the title of that bill refer to the fact that the beer inspector was to receive any fees whatever; yet this court, speaking through GANTT, J., held that the fact that the title of the bill did not specify that the inspector's fees were to be paid into the public treasury, did not vitiate that part of the law which required such payment.

That the title of the bill which defendant assails is sufficient to support all the provisions of said section 10695 is too clear to justify us in citing additional authorities.

Plaintiff asserts that defendant is estopped from denying the constitutionality of any part of the law under which the fees in controversy were collected, for the reason that he assumed to act under the law in collecting the fees, and cannot be allowed to treat that part of the law as valid under which the money was collected and dispute the validity of another part of the same section which prescribes how the fees collected shall be disbursed.

A very similar issue arose in the State of California under a law which provides that the "Commissioner of Immigration" shall collect fees for services in the inspection of immigrants, and after deducting his salary from such fees, pay the remainder thereof into the public treasury for the support of a hospital. After collecting a large amount of fees, the Com-

missioner of Immigration refused to pay any part of them into the treasury, claiming that as the law under which they were collected was in conflict with the Federal statutes, he could not be compelled to make such payment. In construing that law, the Supreme Court of California, in the case of People v. Bunker, 70 Cal. 214, said: ''The defendant having assumed to act under a statute of this State, and having collected moneys according to the letter of that statute, cannot be heard to say that the statute was in conflict with the Constitution of the United States . . . and that he was not bound to pay them over to the proper officer.''

We think the foregoing is a correct statement of a sound rule of estoppel. The defendant in the case at bar having collected the fees under section 10695, Revised Statutes 1909, is estopped from asserting that any part of said section is invalid. The law under which defendant collected the money in controversy was in force when he accepted the office of probate judge of Buchanan county. By voluntarily accepting that office and collecting the fees which the law prescribed for his services, he waived the right to assail the constitutionality of that law. This doctrine also finds support in the case of State v. Speed, 183 Mo. 186, 1. c. 200, and Board of Education v. Kenan, 112 N. C. 566.

We find, however, that that portion of section 10695, Revised Statutes 1909, which requires defendant to pay a certain portion of his fees into the county treasury for the benefit of the school fund, is not unconstitutional; and that the Legislature has full constitutional power to place probate judges upon a salary or upon fees, as in their judgment may seem likely to promote the public welfare.

In their oral argument, learned counsel for defendant assert that the law under consideration, in so

far as it authorizes probate judges to collect fees for their services and pay the same into the county treasury, amounts to "a sale of justice," and therefore is in conflict with section 10, article 2, Constitution of Missouri, prescribing that justice shall be administered "without *sale,* denial or delay."    There is no such issue in the pleading in this cause, and it will be time enough to consider that issue when some person makes complaint that he has been required to purchase justice.

It, therefore, follows that the judgment of the circuit court of Buchanan county should be reversed, with directions to enter judgment in favor of the plaintiff according to the prayer of its petition.    It is so ordered. *Valliant, C. J., Lamm* and *Ferriss, JJ.,* concur; *Kennish, J.,* concurs in all except what is said about estoppel to contest validity of law; *Graves, J.,* dissents, and *Woodson, J.,* dissents in opinion filed.


## DISSENTING OPINION.

WOODSON, J.—I dissent from the majority opinion delivered herein, generally and specially, for three reasons, to be presently and briefly stated.

(a)  First, in my opinion the probate courts of the various counties of the State are county, and not State offices, as held in said opinion.

The office of probate judge from the organization of the State down to this time has been considered, treated and accepted as a county office, by the bench, bar and laity; and that fact has been questioned but once during that long period, nearly a century, and then this court in express terms held it to be a county office.

The case in which that ruling was made is the case of Henderson v. Koenig, 168 Mo. 357.  It was first decided in Division No. One, by the unanimous court, but subsequently the case was transferred to Court in

Banc, and after a careful consideration the divisional opinion, written by SHERWOOD, P. J., was adopted as the opinion of the Court in Banc, all concurring except VALLIANT, J., who was absent.

The court at that time was composed of BURGESS, C. J., SHERWOOD, ROBINSON, BRACE, MARSHALL, VALLIANT and GANTT, JJ. The ability and legal attainments of those jurists are well known, not only in this State, but are recognized by the legal profession throughout the United States.

The opinion of SHERWOOD, P. J., in that case shows careful consideration; exhaustive investigation and great learning, leaving nothing new to be said upon the subject.

The universal acceptation, by the bench and bar, that said office is a county office, for such a length of time, and reinforced by the masterly opinion in the Henderson case, should alone arrest the attention of this or any other court before ruling to the contrary.

But independent of that, let us see what the effect of the ruling in the case at bar must inevitably lead to, if followed.

My learned associates hold that a county office is one whose territorial jurisdiction is coextensive with the county for which it is created, and through which "the county performs its usual political functions, its functions of government."

This is the test, according to my colleagues, by which a county office is to be determined; and according to that test, they say that the probate court is not a county but a State office, because the functions of government are not transacted thereby or therein, but is designed to administer the estates of deceased persons, minors, etc., and is therefore a judicial or a State office.

I have been taught, and have believed, from infancy up to this time, that the judiciary was a part of the government, both State and National. The people

.State ex rel. v. Imel.

of this State attached such importance to this subject, that they devoted the entire article 3 of the Constitution to it. · It is there solemnly declared, by a sovereign people, that the powers of government are divided into three distinct departments, namely, the legislative, executive and judicial; and it is also provided that each shall be confined to a separate magistracy, and that no person, charged with the exercise of the powers belonging to one of those departments, shall exercise any power belonging to either of the others, except in the instances in the Constitution expressly directed or permitted.

It seems to me that this ruling of my associates practically eliminates the judicial clause of this article from the Constitution. But independent of that, if they have stated the true test, by which a county office is differentiated from a State office, then what will become of the offices of the clerks of the probate courts, the clerks of the circuit court, the recorders of deeds, the justice of the peace and the sheriffs of the various counties? Are they not county offices? If I remember correctly, this court has repeatedly held that they are not State offices, yet none of them perform any more governmental functions than do the probate courts.

If the probate courts are State offices, then by parity of reasoning, it must be held that the offices just mentioned are also State offices. Such an announcement would be no more novel than startling in character. Yet if the former is true, then the latter proposition must necessarily be true also. In my opinion neither is true.

(b) The second reason for my dissent is: The opinion holds that the respondent is estopped from questioning the constitutionality of section 10695, Revised Statutes 1909, fixing and regulating the fees to be taxed and collected by the probate courts of certain counties in the State, of which Buchanan is one, for

the reason, that said section was in full force and effect at the time respondent was elected and accepted the office of probate judge, and at the time he gave the bond mentioned in the pleadings, and thereby having agreed to accept the fees so prescribed by said section, he will not now be heard to question that agreement, or the constitutionality of the statute, under which it was made.

That to my mind is a monstrous proposition; and why men of reputed and known legal ability can be misled by such clear sophistry is beyond my comprehension.

Let us suppose a case. By section 13 of article 6 of the Constitution and by the amendments thereto, it is provided that the judges of the St. Louis Court of Appeals shall receive for their services the same compensation that is now or may be provided by law for the judges of the circuit court of the city of St. Louis, which I believe is $5500, per annum. Suppose further, that the next Legislature should enact a statute fixing the compensation of the judges of the St. Louis Court of Appeals at $3000 per annum, without referring to the salary of the circuit judges of that city, and thereafter, while said statute still existing, Judge REYNOLDS, the next retiring judge of that court, I believe, should be re-elected and take his seat, would it be seriously contended for one moment that, because he accepted the office with that statute in existence (though void, as it must be conceded it would be) that he could not challenge its constitutionality? I think not. And the plain reason of that is, that the statute would be void—that is, it would have no life, force or effect; it would be a dead letter, and would be as inoperative as if it had never been enacted. [Norton v. Shelby County, 118 U. S. 425.] "An unconstitutional law is no law at all." [Williams v. Railroad, 233 Mo. 681.]

I have repeatedly pointed out the class of cases to which the rule here announced by the majority applies, and have shown that said rule has no application to the facts of the case at bar, or to similar cases, but notwithstanding said fact, my learned brethren continue to err, without even condescending to consider the difference between the two classes of cases. I refer to those cases again: State ex rel. v. Turner, 210 Mo. 77; McCully v. Railroad, 212 Mo. 1, l. c. 54 to 59; United Shoe Machinery Co. v. Ramlose, 231 Mo. 508; International Text-Book Co. v. Gillespie, 229 Mo. 397; State ex rel. v. Grimm, 239 Mo. 135; State ex rel. v. Blake, 241 Mo. 105. Those cases in brief hold that when a legal right is created by a valid law, that right cannot be taken away or destroyed by an invalid or unconstitutional law.

In the case at bar, the probate court of Buchanan county was by a valid law created, more than a half a century prior to the enactment of said section 10695, and the fees incident to that office were also fixed by a valid law, long prior to said enactment. That being true, clearly the invalid law could not repeal either of the two prior valid laws, nor can a void law be successfully interposed as a bar, as an estoppel to the claim of a right created by statute, such as we have in the case at bar.

The respondent in no sense of the word is claiming the fees in question under this void section of the statute mentioned, but is doing so by virtue of the laws that established the probate court of Buchanan county, and under the previous valid laws which fixed the fees of that office, long prior to the enactment of said section 10695, which he is repudiating, and which to my mind, is clearly unconstitutional.

The learned writer of the opinion in this case recognizes the invalidity of that section, by resorting to this flimsy plea of estoppel to bridge the case over that yawning and otherwise impassable chasm.

My learned associates confuse this class of cases with that class to which the case of State v. Seebold, 192 Mo. 720, belongs. The latter class hold, and correctly so, that when the right asserted by a party, created by, or purporting to be created by, and is based upon, an unconstitutional statute, the party making the assertion will not be permitted to hold on to the benefits received by him under the void statute, and at the same time be heard to say that the parts thereof imposing the burdens upon him are unconstitutional, null and void. In other words, if he claims the benefits given by a void statute, he will not be heard to say that the burdens imposed upon him by the same statute are void. It being void *in toto* he must repudiate it *in toto*. [State ex rel. v. Turner, 210 Mo. 77, l. c. 84.] There is, however, this apparent exception to this latter rule (which upon reflection will be seen to be only apparent and not real) and that is, namely, if that portion of the statute conferring the right claimed is valid, and can be separated from the invalid part, which creates the burdens, the former will be upheld by the courts, unless it appears therefrom that the void part would not have been enacted unless the invalid part had been enacted also; that is unless the invalid part was the controlling or inducing cause of the enactment. [State ex rel. Bixby v. City of St. Louis, 241 Mo. 231.]

But there is another view to be taken of the contention that the respondent is estopped from raising the unconstitutionality of this statute, because of his agreement to accept the fees prescribed by this invalid statute, by accepting the office after the enactment of the statute. Suppose the respondent, instead of agreeing indirectly to accept the fees prescribed and limited by said section 10695 (which it is claimed he did by executing the bond mentioned), and in express terms agreed to have accepted those illegal fees as compensation for his services, or a sum, say, equal to one-half

of the legitimate fees as his compensation, then what would have been the result?

In the case of State ex rel. v. Collier, 72 Mo. 13, the defendant, while a candidate for the office of probate judge of Callaway county, agreed, if elected, to perform the duties of that office for the sum of $1200 per annum, instead of the legal fees of the office, which at the time amounted to about $2600 per annum. He was elected and after qualifying, the Attorney-General instituted *quo warranto* proceedings against him to oust him from said office, upon the ground that said agreement amounted to a bribery of the electors, and resulted in his election. The ruling of the court is tersely stated in the syllabus of the case, which is as follows: "It is unlawful for a candidate for public office to make offers to the voters to perform the duties of the office, if elected, for less than the legal fees. An election secured by means of such offers is void."

The mere fact that the agreement (conceding that respondent made such an agreement by accepting the office) was made under the guise or sanction of a void statute, would in no manner change the legal effect of the agreement. The one would be just as illegal as the other, and equally reprehensible.

But the truth of the matter is, respondent in the case at bar made no agreement, either expressed or by implication, in so far as this record shows, to perform the services of probate judge for the sum specified in said section 10695, and for that reason he should not be estopped from questioning the constitutionality of the same. If upon the other hand he made such an agreement either expressly or by implication, then that agreement is necessarily void under the rulings in the case of State ex rel. v. Collier, supra; and if elected upon that understanding, the election would be void, and he should be ousted from the office.

(c)    The third reason I have for dissenting from the majority opinion is, that said section 10695 violates

section 10 of the Bill of Rights, which reads as follows: "The courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice should be administered without sale, denial or delay."

This section of the Constitution has no reference to a corrupted sale of justice, as popularly understood, such as bribing of the judge or jury, but refers to and was intended to abolish the sale of justice, as it existed in England, under the early common law, which will be presently considered. This is manifested by the fact that the last clause of section 10 of the Bill of Rights is substantially the same as section 40 of the Magna Charta, which is as follows: "*Nulli vendemus nulli negabimus aut differemus, rectum aut justiciam.*"

We have occasion to touch upon this subject in the case of Hayes v. Mining and Milling Company, 227 Mo. 288. It was there held that a statute which required a fee of three dollars to be paid by every person who brought a suit in the circuit court of certain counties of the State, to the clerk of the court, for the use of the general revenue of the county, amounted to a sale of justice, and was a violation of said section 10 of the Bill of Rights prohibiting the sale of justice.

Section 40 of the Magna Charta was aimed at the same abuses discussed in the Hayes-Mining & Milling Co. case. Under the early common law excessive fees were exacted and paid by persons in whose favor process of law was refused or delayed as against their adversaries. The wealthy and influential obtained in behalf of themselves and dependents, those favors, by means of that abuse. Those fees were openly exacted and paid before the charter and under the guise of a willing contribution (*sponte*) after, and were absorbed by the public revenue. The king or his deputies got the benefit of those fees just as the county or State

gets the benefit of the fees mentioned in the proviso of section 10695. [McKechnie's Com. Magna Charta Charts, 457-463; 2 Stubbs, Const. History, 633; 3 Lingard History of England, 53-4.]

The English people in the thirteenth century no more thought of procuring original or judicial process without paying the reasonable costs thereof, than do the citizens of this State and nation think of doing so in the twentieth century; but the intention of both the Magna Charta and section 19 of the Bills of Rights, is that revenues for State and municipal purposes shall not be levied in any form or under any guise, upon the administration of justice, and that those who have to resort to the courts of justice, and especially the widows and orphans whose estates are under the jurisdiction and control of the probate courts, shall not be compelled to pay more for the justice there administered to them, than reasonable fees for the services performed for them by the officers of the court. The Illinois Constitution in express terms provides for payment of "reasonable compensation for services rendered" by such officers; and when we consider our Constitution in the light of precedents and the history of our administration of justice, it must be held that it necessarily implies what the Illinois Constitution provides for in express terms, namely, that reasonable fees may be taxed in each case as compensation for the services performed therein by the court officers. If that authority is not necessarily implied in our Constitution, then clearly all systems of fees in judicial proceedings are unauthorized and are absolutely null and void. But even under section 10 of the Bill of Rights, the Legislature has no right, power or authority to authorize the taxation and collection of unreasonable or excessive fees for any purpose, and a statute which authorizes such taxation is clearly unconstitutional, null and void, and amounts to a sale of justice.

The enactment of said section 10695 was a legislative determination that the fees of the probate judges, in the counties mentioned therein, are excessive and unreasonable, and it should have reduced the amount of the fees authorized by previous acts to be collected instead of maintaining them, and providing as it does, for the payment of the excess over the sum, $3000, into the treasury of Buchanan county for the use of the general revenue fund.

Had the latter been done, the statute would have been constitutional, but as it is it is clearly unconstitutional, null and void, in that it makes the litigants and estates in those courts pay more than the cost of performing those duties, and consequently amounts to a sale of justice, just as much as did the payment of the excessive fees in England amount to such a sale. It clearly violates said section 10 of the Bill of Rights.

The question was asked during oral argument of the cause, What would be done with the excessive fees which have been collected by the respondent? The answer to that question rests with the Legislature and not with the courts. If it had enacted a valid law, reducing the fees to a sum which was reasonable, he would not have collected them, and consequently no such question could have arisen.

In passing, however, it might be suggested that if the fees collected by respondent are unreasonable and constitute more than reasonable compensation for the services performed by the officers of the court, perhaps the excess would be illegal and non-collectible. To illustrate, suppose the Legislature should by statute increase the fees of the probate judges of the counties mentioned ten or twenty fold, and require that all sums above $3000 should be paid into the county treasury for general revenue purposes, would the courts hesitate to declare such a statute void or violative of said section 10 of the Bill of Rights? Clearly

not. There is no difference in principle between the case at bar and the case supposed; the difference is one of degree and not of principle.

I am, therefore, of the opinion that the judgment of the circuit court should be affirmed.