THE STATE ex rel. Attorney-General v. SPEED, Appellant.

In Banc, June 22, 1904.

1. **SALARY OF STATE OFFICERS: Annual: Variance.** Where by the general trend of the statutes the salaries allowed State officers are annual ones, there should be found some direct language, in the particular statute which gives a certain officer a named salary, to indicate that the salary allowed him was to be a semiannual rather than an annual one.

2. ———: ———: **Coal Oil Inspector.** The statute provided that the Coal Oil Inspector of St. Louis "shall have and retain $7,000" out of the fees collected by him "as and for his full compensation, fees and salary, and out of which he shall pay all other clerical hire and other employees" and all expenses of his office, "and the balance of said fees so collected . . . he shall pay over" to the State Treasurer, and that "said payments shall be made to the Treasurer on the second Monday in January and July of each year." *Held*, that this statute does not mean that he can retain a salary of $7,000 for each semiannual period, but only that sum for his full compensation for each annual period.

3. ———: ———: ———: **Meaning of Amendment to Statute.** The manifest intention of the Legislature in repealing the old statute which allowed said officer to retain all the fees collected by him, which the petition charged and the demurrer admitted amounted to $12,000 per annum, and in enacting this statute which fixes his compensation at $7,000, was to reduce his compensation, and permit him to retain that sum for his full annual compensation. Any other view would make such statute either a meaningless enactment or an ill-concealed effort to redeclare that he should retain all the fees collected by him.

4. **SALARY: Meaning.** The word "salary" when used in a statute, unless otherwise qualified by some words used, means a per-annum compensation.

State ex rel. v. Speed.

5. ———: **Unconstitutional Statute: Raised by Officer.** Neither in morals nor in law should an officer be permitted to say that a statute, under which he holds office, and which requires him to pay into the State Treasury a part of the fees collected by him as such officer, is unconstitutional, and, therefore, he is at liberty to collect all fees it authorizes him to collect and to retain such as it directs him to pay into the State Treasury.

6. ———: ———: **Coal Oil Inspector of St. Louis: Special and Local Law.** A statute which authorizes the coal oil inspector of a city that now has or may hereafter have three hundred thousand inhabitants to return to the State Treasury all fees collected by him in excess of a certain named amount, while permitting all other inspectors in the State to retain all the fees collected by them, is not unconstitutional as a special or local law, for it applies alike to all who are or who may come into like situations and circumstances.

7. ———: ———: **County Officer: Uniformity of Fees.** A coal oil inspector who derives his authority by appointment of the Governor and who is compelled to pay the fees collected by him over and above the amount he is permitted to retain for his own compensation, into the State Treasury, is not a county officer and hence the statute thus providing is not violative of the section of the Constitution which requires "the General Assembly, by a law uniform in its operations, to provide for and regulate the fees of all county officers."

8. ———: ———: **General Law: Classifications: Arbitrary.** The Constitution after enumerating thirty-two particular subjects upon which no special legislation shall be enacted, provides that "in all other cases where a general law can be made applicable, no local or special law shall be enacted." And the general statutes concerning the inspection of coal oil fixed a fee of twelve cents a barrel for the inspection of oils anywhere in the State, and permitted all the inspectors, whether appointed for cities or towns or counties, to retain all the fees collected, and by a subsequent amendment it was provided that the coal oil inspectors of cities then having or that might hereafter have three hundred thousand inhabitants, should retain only $7,000 of the fees thus collected for their compensation and expenses, and required them to pay the rest into the State Treasury, but still permitted all other inspectors to retain all their fees. *Held,* that the amendment was not unconstitutional, as a special law, nor was the classification made, considering the difference in labor and expense in inspecting the oils in the counties and smaller cities, and in the city to which the amendment applies, arbitrary or unreasonable.

Appeal from Cole Circuit Court.—*Hon. Jas. E. Hazell,*
Judge.

AFFIRMED.

*W. M. Williams* and *Johnson, Houts, Marlatt &
Hawes* for appellant.

(1) The act does not require the coal oil inspector
of the city of St. Louis to pay into the State Treasury
the excess fees collected by him over and above seven
thousand dollars per annum. There is nothing in the act
fixing seven thousand dollars as an annual allowance to
the inspector. It does not say that he shall only retain
this sum out of the fees collected in each year. The
period of one year is nowhere mentioned in this section
of the statute. The inspector is required to make a set-
tlement each six months of the fees collected during that
time, and to pay the excess over seven thousand dol-
lars into the State Treasury. It does not appear from
the petitions that either of the defendants received and
collected during any period of six months more than
seven thousand dollars, and under the terms of the stat-
ute neither is indebted to the State in any amount.
Laws 1899, p. 231.    (2)    "The intention of the Legis-
lature must be ascertained from the words of the statute,
and not from any general inferences to be drawn from
the nature of the objects dealt with by the statute."
State v. Hays, 78 Mo. 605; Hicks v. Jamison, 10 Mo.
App. 35; Singhuff v. Weaver, 66 Ohio St. 621; Dewey
v. United States, 178 U. S. 521; Endlich on Interpreta-
tion of Statutes, sec. 72.    (3)    The statutory rule for
the construction of laws is that "words and phrases
shall be taken in their plain and ordinary or usual
sense." "The popular or received import of words
furnishes the general rule for the interpretation of
public laws, as well as of private and social transact-
ions." R. S. 1899, sec. 4160; Warren v. Paving Com-

pany, 115 Mo. 577; Randol v. Garoutte, 78 Mo. App. 609. (4) The act is in conflict with section 53 of article 4 and section 12, article 9, of the Constitution of this State. Henderson v. Koenig, 168 Mo. 356; Rauer v. Williams, 50 Pac. 691; Devine v. Commissioners, 84 Ill. 590; State v. Mayer, 45 N. J. L. 247; Topeka v. Gillette, 32 Kan. 431; Gibbs v. Morgan, 39 N. J. L. 126; Commonwealth v. McMichael, 8 Pa. Dist. 157; Morrison v. Balchut, 5 Atl. 739; Edmonds v. Herbrandson, 14 L. R. A. 727; State v. Julow, 129 Mo. 177; State v. Walsh, 136 Mo. 400; Dunne v. Railroad, 131 Mo. 1.

*Edward C. Crow*, Attorney-General, and *C. D. Corum* for respondent.

(1) The primary rule for the construction of statutes in this State, as laid down by the Revised Statutes, and as established by the general rules of construction, is that words shall be taken and understood according to their plain and ordinary meaning, and regard must be paid to their general use. Occult meanings are not sought and strained constructions are not favored. Warren v. Paving Company, 115 Mo. 572; State ex rel. v. Marion Co. Ct., 128 Mo. 427; State v. Jones, 102 Mo. 305; State v. Johnson, 132 Mo. 105. ''Fees are compensation for particular acts or services, as the fees of clerks, sheriffs, lawyers, physicians,'' etc. Cowden v. Hough, 10 Ind. 85. It is evident, therefore, that, since the amendment of the act under consideration, the inspectors do not receive their compensation as fees, and if we are correct as to this proposition, then the word ''fees'' may also be eliminated from consideration. It therefore follows that a proper interpretation of this statute rests upon the proper meaning to be attributed to the word ''salary.'' The ordinary signification of the word ''salary'' is clear. It is understood by all as having reference to yearly compensation. It has received judicial definition, as the following authorities

show: Henderson v. Koenig, 168 Mo. 367; Cowden v. Hough, 10 Ind. 83; Fulgham v. Lightfoot, 1 Call 219. Many lexicographers have given it a like meaning. Burrell's Law Dict.; Anderson's Law Dict. (2) If the contention of appellant be sustained, it must be on the ground that the Legislature intended to fix the salaries of these inspectors at fourteen thousand dollars per annum. When one reflects on the salaries of other and more responsible officers of the State, it is unreasonable to assume that the Legislature intended to do any such thing. Statutes must be construed in reference to the objects which prompted and induced their enactment. Ross v. Railroad, 111 Mo. 18; State ex inf. v. Cramer, 150 Mo. 100. The true meaning of an act is to be found, not merely from its words, but from the cause and necessity of its being made. Endlich on Interpretation of Statutes, sec. 27. The language of the statute must be given such a construction as will carry its design into effect, even though in so doing the exact letter of the law be sacrificed, or though the construction be indeed contrary to the law. Endlich on Statutory Construction, sec. 295. (3) The coal oil inspectors in cities of three hundred thousand inhabitants or over or less are not county officers within the meaning of the Constitution. (4) The act here does not fix the compensation of the inspector of the city of St. Louis at a different amount from that of any other city which now has or which may hereafter have a population of three hundred thousand inhabitants or more. (5) The Constitution does not prohibit classification for legislative purposes. The section under consideration is not an arbitrary act. The design of the Legislature was to curtail the fees of the inspectors in cities containing a large population, and wherein such inspector received, under the law as it existed prior to the enactment of 1899, an unreasonably large sum for the services performed. The line had to be drawn somewhere, and the Legislature, in fixing the amount of fees in cities of a certain

population or more, did not act arbitrarily or unwisely. (6) This law is not local. It need not necessarily always apply to the city of St. Louis. It is not a matter in which the people of St. Louis are peculiarly interested. The amount of the fees which are to be turned into the State Treasury is a matter in which all of the citizens have an interest. It has been expressly held that any act which applies to and embraces all persons who are and who may come under it under like conditions and circumstances, is not special within the meaning of the Constitution. Humes v. Railroad, 82 Mo. 221; Burkholder v. Trust Company, 82 Mo. 572; State ex rel. v. Miller, 100 Mo. 439; State ex rel. v. County Court, 128 Mo. 443; Ex parte Lucas, 160 Mo. 237. The act in question is applicable to any city which now has or which may hereafter have three hundred thousand inhabitants or more. It is not, therefore, a local or special law. State ex rel. v. Bell, 119 Mo. 70; State ex rel. v. Marion County Court, 128 Mo. 427; Ewing v. Hoblitzelle, 85 Mo. 64.

ROBINSON, C. J.—This is a proceeding by the State, upon the relation of the Attorney-General, against the defendant Richard B. Speed, to recover the sum of $11,477.72, alleged in the petition to have been retained by defendant from the fees collected by him while coal oil inspector for the city of St. Louis, between the twenty-first day of August, 1899, and the nineteenth day of June, 1901, in excess of the amount allowed to him by law, of seven thousand dollars per annum.

To the petition filed defendant interposed a demurrer, assigning as his reason why the action therein stated against him should not be maintained, first: "Because the petition does not state facts sufficient to constitute a cause of action," and second, "Because there is no valid enactment requiring the defendant to pay into the State Treasury the fees collected by him

as coal oil inspector, in excess of seven thousand dollars, as demanded in said petition.'' This demurrer the court overruled, and defendant declining to plead further, judgment was rendered in favor of plaintiff and against defendant for said sum of $11,477.72, as prayed for in plaintiff's petition, and the case has been brought to this court on defendant's appeal:

The theory upon which this case has been presented and is now sought to be maintained by the State is that, since the going into effect of the act of May 19, 1899 (Laws 1899, p. 231), repealing section 5575 of article 1, chapter 87, Revised Statutes 1889, relating to inspectors of petroleum, etc., coal oil inspectors for cities of this State with a population of three hundred thousand inhabitants or over, are entitled to retain seven thousand dollars, and no more, annually, out of the fees collected by them, and that the balance of such fees the inspectors shall pay over to the State Treasurer, while the defendant, upon the other hand, to defeat this proceeding against himself, contends, first, that by a proper construction of the statute as enacted, he, as coal oil inspector for the city of St. Louis, was entitled to retain the sum of seven thousand dollars out of the fees collected by his office, at each semiannual statement period designated in said act for the reporting of said fees; or, to state his contention directly, it is, that by this statute, his salary or compensation has been fixed at fourteen thousand dollars per annum; and for his second contention against plaintiff's right to maintain this action against him, he says that the act in question, of May 19, 1899, is violative of the provisions of section 53, article 4, of the Constitution of Missouri, prohibiting the General Assembly from passing any local or special law, and also of the provisions of section 12 of article 9 of said Constitution, in which it is declared: ''The General Assembly shall, by a law uniform in its operation, provide for and regulate the

fees of all county officers, and for this purpose may classify the counties by population.''

It will be noted that the statute in question in direct terms does not provide that the inspectors for cities of three hundred thousand inhabitants or more shall retain or be entitled to retain seven thousand dollars out of the fees collected by them, as a per-annum compensation for their services, or that they shall receive or retain semiannually compensation to that amount. No definite period is named in the act, to which this designated sum of $7,000 shall be applied as and for the full compensation of the inspector, and it is this want of definiteness that has caused the two opposing interpretations of the State and the defendant to be indulged and asserted, and that has resulted in the present litigation.

The section of the statute we are called to consider reads:

''Each inspector shall demand, collect and receive from the owner cr person calling upon him to inspect, or for whom he shall make any inspection, fees at the following rates for inspecting or testing, gauging and branding said oils or fluids under this article, to-wit: For each barrel or larger package the sum of twelve cents; for each small package the sum of six cents; and when an inspection in bulk is made, in the manner provided in section 7586, the sum of twelve cents for each barrel or other package filled, gauged and branded according to the provision of said section: Provided, that in all cities of the State, which may now have or which may hereafter have a population of three hundred thousand inhabitants or more, the said inspector of oils and petroleum shall have and retain seven thousand dollars out of the said fees collected for inspections as herein stated and required of him, as and for his full compensation, fees and salary, and out of which he shall pay all other clerical hire and other employees and all ex-

penses of whatever character in the management and conduct of the business of his office; and the balance of said fees so collected over and above the said sum of seven thousand dollars, he shall pay over to the Treasurer of the State of Missouri, to be placed to the credit of the general revenue fund of the State. Said inspector shall, at the time of said payments to the Treasurer, take a receipt and duplicate receipt therefor. The original he shall file with the State Auditor and the duplicate he shall file in his own office and keep same as a part of the records thereof. Said payments shall be made to the Treasurer on the second Monday in January and July of each and every year, and said inspectors shall on said dates file a full, true, complete and sworn statement with the Auditor of the State for all oils inspected during the six months preceding and since his last statement and settlement, also containing the names of the persons, firms or corporations for whom inspections were made and the number of gallons of oil inspected, barrels gauged and branded.''

That seven thousand dollars is to be the full compensation or salary allowed to the inspector for his services for whatever period the Legislature had in mind when this section was enacted, is most certain. The period intended to be covered and compensated for by that definite salary is the vexed question, as before said, that has led to this controversy and which we are called upon to determine.

Unlike appellant, we are unable to see in the concluding provision of the section in question, anything to indicate, and much less to demonstrate, that a seven thousand dollar semiannual compensation or salary to the inspector was contemplated from the fact that the inspector is required to pay over to the Treasurer of the State semiannually on the second Monday in January and July of each year, the balance of said fees by him collected over and above said sum of seven thousand dollars, and at the same time is also required to

prepare and file a full, true and complete sworn state-
ment with the Auditor of the State of all oil inspected
during the preceding six months, etc. To us, these pro-
visions of the statute serve to throw no light upon the
inquiry as to the time or period intended to be covered
by the seven thousand dollar allowance, as and for the
full compensation for the inspector's services. Such
or similar requirements are made as to almost all of-
ficers in the State intrusted with the duty of collecting
the fees of their office, and out of which their salary,
compensation or allowance is to be taken or paid; some
being required to make quarterly, and some semiannual,
and still others annual statements, and at such times
are required to turn over the balance in their hands,
from the collections so made by them, over and above
their designated salary, to some other designated of-
ficer, and yet we know of no officer in the State, nor
have we ever heard of one, to whom a fixed and stated
sum has ever been allowed, as a quarterly or semian-
nual salary. Without undertaking to give a reason
(and perhaps no very substantial or all-persuasive one
could be suggested) why a quarterly or a semiannual
salary has never been named or provided by the Legis-
lature for some of the different officers in the State, it
is sufficient to say, that such has never been done so far
as we are now advised. The terms annual or monthly
salary have been invariably employed to designate the
fixed compensation allowed to all officers of the State
heretofore, whatever we may say of the reason, or the
want of reason for the custom. A designated annual
salary is frequently made, payable in monthly, quar-
terly or semiannual installments of a definitely named
sum, but as before said, we know of no officer of the
State to whom a prescribed quarterly or semiannual
salary has ever been made.

While a practice long followed by the Legislature
upon a given line is no direct argument against its
right to vary from that custom in subsequent legisla-

tion, or, as applied to the case in hand, is no argument against the authority of the Legislature to have provided in the act in question, if it had so desired, that the coal oil inspector for the city of St. Louis might have for his services a fixed, definite and prescribed semiannual, instead of an annual salary, as is prescribed for all officers of the State; yet this suggestion of the long custom of the Legislature in providing for the salary of the officers of the State generally, in a given way, is not wholly without merit, as against one who can find the innovation claimed in his favor, only by the indulgence of a most latitudinous inference from what appears to us to be a mere incidental provision of the act in so far as concerns the question involved here, to-wit, that he is required to make a semiannual report of the fees collected by his office, and at such period turn over the balance in his hands, above his salary, to the treasury of the State.

A semiannual salary allowance to an officer is so unusual an occurrence and so out of the ordinary course of legislation, that before one should conclude it was intended by a given act, there should be found either direct language therein naming the salary provided as such, or facts from which that conclusion is made most apparent.

So general has been the practice of designating and fixing the salaries of officers in the State at a per-annum allowance, it might not be an unsafe rule to announce, that where a fixed sum as and for the full salary of an officer is found prescribed by statute, that is meant a per-annum allowance for said officer in the absence of something in the statute clearly indicating a contrary purpose, and we are unable to see that contrary purpose in the statute in question, from the simple fact to which appellant has directed our attention, and in which he essays to have discovered the legislative purpose of providing for his office a fixed semiannual salary of seven thousand dollars, instead of an annual salary of

that amount; that is to say, from the fact that the inspector is required therein to make, prepare and file his semiannual statement of the fees collected by his office, on the second Monday of January and July of each year, and at said time pay over to the Treasurer of the State any balance in his hands from collections above seven thousand dollars allowed to him as salary. Had the statute in question required of the coal oil inspector in this instance, as by statute many officers of the State intrusted with the collection of large fees are required to do, to make monthly statements of their accounts, and to pay over the balance in their hands from such collections above their salaries to the Treasurer or other proper officer for receiving it, we presume appellant would have then seen in the statute the legislative purpose of fixing his salary at seven thousand dollars per month, or what is the same, the enormous aggregate of eighty-four thousand dollars per annum. But as said before, there is nothing whatever in that provision of the statute to which appellant has called our attention, that can in any way be said to indicate, or throw light upon the inquiry as to what period of time the salary named and designated in the act is intended to apply, and we are left to find that solution elsewhere if possible.

The salary of the clerk of this court is designated by statute, like the salary of the coal oil inspector of the city of St. Louis, by the statute in question, without having named the time for which the salary prescribed is to be as and for his full compensation, and like the statute in question, this statute regarding the clerk also provides that he must prepare and make out a statement of all fees collected in his office and file same with the State Auditor, and turn any surplus in his hands, over the amount allowed him and the deputies in his office, to the State Treasurer. The clerk's statement is, however, to be made quarterly, instead of semiannually, as required of the inspector of coal oil of the

city of St. Louis, and yet no one has ever thought from this fact that the designated compensation of three thousand dollars is to be allowed to the clerk every three months during the year, when his report is made and filed; but it has ever been considered and treated as his yearly or annual salary or compensation. The mere matter of the amount of the allowance named in either instance is of itself enough to forbid an inference that the amount named was intended as a quarterly allowance in one case, or a semiannual allowance to the officer in the other.

Respondent, upon the other hand, suggests that a proper solution of the question is to be found in the act itself, if we but give to the word "salary," used therein, its proper meaning and significance, and to support this view, our attention has been called to the definition of the word by various courts and law lexicographers. Thus in Burrell's Law Dictionary the word "salary" is defined to mean, "An annual compensation for services rendered; a fixed sum to be paid by the year for services," and Anderson in his law dictionary gives this as one definition of the word, "The per-annum compensation of men in official and in some other positions." To the same effect is the language of this court in the case of Henderson v. Koenig, 168 Mo. 356. It is there said: "Salary is regarded as a per-annum compensation."

Though we do not at this time undertake to assert that these definitions of the word salary are so well established and inflexible that it would be improper to say that its use could have reference to nothing else than a yearly or per-annum compensation, we do think that when the word salary is found in a legislative act as applied to one's compensation for official work done or required, it is so generally understood to apply to the officer's per-annum allowance, when not otherwise qualified, that we are justified in attributing that meaning to the word.

If we look to the object the Legislature had in view, in repealing section 5575 of the statute of 1889 as it stood prior to 1901, by which section the inspector of coal oil of the city of St. Louis was entitled to retain all the fees collected by his office as and for his compensation, and if we will consider what was the mischief sought to be corrected by the repeal of the old law and the enactment of the present statute in its place and stead, the idea must be immediately abandoned that the Legislature intended by the present act to allow a semiannual compensation of $7,000 to the inspector for the city of St. Louis for his services, an amount in excess of the entire fees collected by the office.

To credit the Legislature with any purpose whatever in repealing section 5575 of the statute relating to compensation of coal oil inspectors for the city of St. Louis, as it stood prior to 1899, and the re-enactment at that time of the section in question in lieu thereof, we must determine that it sought to reduce the inspector's compensation for his services rendered, and that would not be accomplished if we should determine that the $7,000 compensation or salary allowed by the act in question, is to be a semiannual instead of an annual allowance. By the law as it stood prior to the act of 1899 in question, the inspector got as and for his compensation all the fees collected by his office. These fees, as shown by the reports of the inspector, the facts of which are set out in the petition by the Attorney-General filed herein, amount in the aggregate to about $12,000 per annum. So if the Legislature had intended to provide by the last act in question that the inspector of coal oil for the city of St. Louis be allowed a seven thousand dollar semiannual compensation or salary for his services, to be retained out of the fees collected by his office, it would have been but an ill-concealed and labored effort to redeclare that said inspector was to have and retain all the fees collected by his office. To provide that an officer is authorized to retain as his salary

or compensation $7,000 semiannually out of the fees collected by his office, which are shown to be about $12,-000 per annum, is but to provide that he is entitled to all the fees collected by his office, just the thing the coal oil inspector for the city of St. Louis was entitled to do under the old statute before its repeal and the re-enactment of the present statute.

So, to give to the statute in question any force or meaning whatever, or to attribute to the Legislature any object or purpose in substituting the section in question for the one repealed, we must say that the $7,000 allowance to the inspector provided therein, as and for his full salary or compensation, must refer to a period other than for six months. It is not to be presumed that the Legislature responded to the general demand for the curtailment of the compensation allowed to the coal oil inspector for the city of St. Louis, and sought to satisfy it by a repeal of the old provision of the law by which he got all the fees collected by his officers, and re-enacted in its place and stead the section in question, allowing to him the same thing under a new form of words.    It is quite manifest the allowance named was intended for the inspector's per-annum compensation.

On part of defendant, the further contention is, however, made as above indicated, that, if he be adjudged wrong in his first contention that under the act in question he was entitled to retain seven thousand dollars semiannually, or fourteen thousand dollars annually, as and for his compensation or salary, the State is not entitled to maintain this proceeding against him, because said act is unconstitutional, in this, that it is a local and special law, and is not uniform in its operation throughout the State upon other officers of the same class and performing the same kind of service.    This objection presents the anomaly of an officer assuming and holding an office under a law of the State, and of exacting and receiving for his services all the fees due and provided under said law, and when called upon by

the State to account for the fees so obtained by him thereunder, saying to the State, your pretended law is unconstitutional, and I am not obligated to account for the surplus fees collected by me, over and above the amount allowed for my compensation, which the law has provided shall be paid into the State Treasury. Such a plea should be as intolerable in a code of law as it is reprehensible in a code of morals.

But the statute in question is not unconstitutional on the ground that it is local and special, in that it applies only to the defendant as inspector for the city of St. Louis, because the act expressly applies to. inspectors of petroleum, coal oil, etc., in all cities which then had or which may thereafter have the population of three hundred thousand inhabitants or more. It applies equally to all "who are or who may come into like situations and circumstances," and is for this reason not local or special. [Humes v. Railroad, 82 Mo. 221; State ex rel. v. County Court, 128 Mo. l. c. 443; Ex Parte Lucas, 160 Mo. l. c. 237.]

Nor is the act, as appellant contends, unconstitutional on account of being repugnant to the requirements of section 12 of article 9 of the Constitution, which declares: "The General Assembly shall, by a law uniform in its operation, provide for and regulate the fees of all county officers, and for this purpose may classify the counties by population." In this act, no attempt is made to regulate the fees of any county officer, but that of a State officer purely. One who derives his authority solely by appointment from the Governor, and the emoluments of whose office, over and above the salary provided for its incumbent, goes directly into the State Treasury, as the funds of the State. The coal oil inspector of the city of St. Louis does not and is not required by any law to report his fees collected, or any part thereof, to any city or county officer, nor has any city or county any interest therein, but the inspector makes his report to the State Auditor, and

pays the surplus funds in his hands over to the State Treasury. He is in no sense a county officer within the meaning of section 12, article 9, of the Constitution, and the act in question is unaffected by its provisions.

The most plausible contention made by appellant that this act is special is, that it does not provide that no coal oil inspector in the State shall receive more than seven thousand dollars per annum, and as to this it may be said that unless restrained by some constitutional provision, the power of the Legislature is plenary, and it may make such classifications of officers and their salaries as it may see fit. The Constitution does not prohibit local or special legislation in all cases, but after enumerating thirty-two particular subjects about which no special legislation shall be enacted (and the office under consideration here is not so enumerated) section 53 of article 4 of the Constitution, invoked by appellant, provides only that "in all other cases where a general law can be made applicable, no local or special law shall be enacted."

In the smaller cities of the State, as in the counties with their larger but scattered population, the time employed and labor attending the inspection of the few barrels of oil that reach them during the course of a year for local use, in the natural order of things, might be and possibly is quite as great as is the inspection of a hundred or of a thousand times that quantity of oil reaching a great commercial and transportation center like St. Louis, in train load consignments. By a short walk of perhaps not more than a block or so, and by putting in four or five hours during the day, the city inspector might readily inspect several hundred or thousands of barrels of oil, while the inspector for the county, called to inspect a few barrels purchased for local use in a remote part of the county, might be required to ride for miles and spend an entire day with only the result of one or two barrels of oil inspected. A compensation named, whereby one inspector is al-

lowed all of a certain per centum of the fees collected by him, might be very inadequate as a recompense for the actual services rendered in the performance of his official duties, while the allowance of the same per centum of fees collected by the other, would be a gross extravagance and wholly disproportioned to the value of the service he is required to perform.

The circumstances and conditions under which the inspector for the larger cities like St. Louis is called upon to work, is so different to that surrounding the inspector for the smaller cities and the counties of the State, that a common rule for measuring their compensation would of necessity result in inequality and unfairness, and call for some classification or distinction to obviate the evil of its working. This evil the Legislature doubtless saw in the working of the law previous to its amendment, under which the inspectors of petroleum for the city of St. Louis, according to their reports made (a statement of which is found set out in the petition herein), had been receiving the extravagant sum of twelve thousand dollars per annum for services the most simple in character, and requiring for their performance no particular skill, prior preparation or training whatever, as against the receipt of a few hundred dollars or less in many instances by other inspectors throughout the State for doing like services, and this inequality in conditions and compensations called for a classification of some kind that would obviate its further continuance, and this the Legislature undertook to meet and prevent.

The classification is in no wise arbitrary or unreasonable, as the appellant further contends, but in our opinion the classifications made therein seem based upon the most obvious principle of common fairness and public necessity. The line of demarcation had to be drawn somewhere, and that it was made to affect inspectors of cities of 300,000 inhabitants or more, rather than inspectors for cities with a population of

two hundred and fifty or three hundred and fifty thousand inhabitants, does not make the act arbitrary or indicate that its provisions in that respect are unreasonable.    As said before, the act in question affects not alone this defendant, as the inspector of petroleum for the city of St. Louis, with its half million or more of population, but all other inspectors of the State for any other city which had at the time of its passage or which might thereafter have three hundred thousand inhabitants or more.

The act is in nowise unconstitutional, and the judgment of the circuit court will, therefore, be affirmed.

*Brace, Marshall, Gantt, Burgess* and *Valliant, JJ.,* concur; *Fox, J.,* not sitting.