## IVERSON TOOL CO. et al. v. PHILLIPS et al.

No. 22350.  Opinion Filed Nov. 29, 1932.

Rehearing Denied Dec. 27, 1932.

Hayes, Richardson, Shartel, Gilliland & Jordan, for petitioners.

Frantz C. Conrad, McComb, Henshaw & Conrad, J. Berry King, Atty. Gen., and Robt. D. Crowe, Asst. Atty. Gen., for respondents.

KORNEGAY, J. This is an original proceeding to review the award of the Industrial Commission made in favor of W. H. Phillips, and against the Iverson Tool Company and its carrier, Consolidated Underwriters.

An inspection of the record shows that, on the 30th of December, 1930, employee's first notice of injury and claim for compensation was received by the Industrial Commission. In that he states that his average daily wage was $175 a month, and the date of his accident was August 23, 1930, and it occurred 8 miles east of Chickasha, and the cause of the accident was "in car wreck—compound fracture of left arm and hand injured," and that he was paid wages by the month and received medical attention.

On the 9th of January, 1931, the tool company and the insurance company filed an answer, as follows:

"Comes now the respondent and insurance carrier and deny that the above claimant sustained an accidental injury arising out of and in the course of his employment with Iverson Tool Company."

The attending physician's report was submitted on the 30th of August, 1930. From it, it appeared that the left ulna and radius were broken and also the left humerus, and there had been fractured many small bones of the left hand, and there were many lacerations and contusions over left arm, and that when the patient entered the hospital, it looked as if he might lose his arm, as there was very little blood supply left, and the entire hand was black and cold, and there was no pulsation of either the radial or ulna artery.

The employer's first notice of injury was received the 14th of January, 1931, and the answer was that the injury was not received in the course of employment. On the 17th of January, a first notice of injury on behalf of claimant was given, and the occupation assigned was that of a salesman, and the cause of the accident was "truck run in the side of my car." The nature and extent of injury was "left arm broken 5 places," and his average daily wage was $5. The case was set for hearing and testimony taken of the claimant himself. He stated that he was working for the tool company on August 23, 1930, and they were pay-

ing him $150 a month, and that he was engaged in "retail and wholesale of oil field equipment and machinery," and he was working for the company at Oklahoma City, and the details of it were as follows:

"A. Well, my main job was delivering and installing and servicing stuff that they sold, and I would have to go out over the drilling rigs and service it and install it. Q. They sold oil field machinery, did they? A. Yes. Q. Your job was to deliver it—what did you use to deliver it? A. Used a light truck. Q. It was your every-day job to go out and install the machinery? A. Yes, sir; some of the time I'd go and install it. Q. You say you also repaired the machinery? A. Yes, serviced it. Q. That was on these drilling rigs? A. Yes. Q. Rigs that were drilling for oil and gas? A. Yes, sir. Q. Was it rotary devices and machines of all descriptions? A. Yes, wells and engines. Q. Well, did you do anything else? A. Yes, sir—I'd run a service shop—it was directly connected with the store. Q. You had to go in there, did you, and get tools? A. Ten or fifteen times a day I did. Q. You were around there? A. Yes. Q. Any other duties you had? A. Well, I had to work around the store—I had to be there 24 hours a day— I slept there at the store. Q. Now, I will ask you to tell the court what happened on August 23, 1930, with special reference to the injury you sustained? A. Well, I was in a car wreck between Oklahoma City and Duncan. Q. Where were you going? A. To Duncan. Q. Where were you coming from? A. Oklahoma City. Q. What was your business—were you on the business of your employer, your principal, or were you on your own business? A. I was going down for my employer to see a man with the Carter Oil Company and demonstrate and show him the bits. Q. That is oil field equipment? A. Yes. Q. You were with whom—whom were you riding with? A. Mr. Price. Q. Mr. Who? A. Mr. Price. Q. Tell the court how this accident occurred? A. Just run into a truck—the truck sideswiped the car I was driving. Q. Were you on the right side of the road? A. Yes."

Further along the following occurred:

"Q. Were you instructed to go to Duncan, or did you have that authority? A. I wasn't instructed, but I had gone places without being told to go. Q. That was one of your duties, was it? A. Yes, sir. Q. You were on duty at that time? A. Yes, sir."

On cross-examination he stated he had no bits in the car, and had no appointment with the superintendent of the Carter Oil Company, and that Sid Iverson, who was a company representative, was at Duncan, and that he went with Mr. Price, who had been drinking, and he left the Iverson tool house with a half gallon of whisky, and as far as he knew the car he was driving was Price's, and he left Oklahoma City at midnight, and Mr. Stewart was his boss at Oklahoma City, and he was supposed to stay there at the store, and that he wanted to go home and had no instructions to go down to sell anybody any bits, and that Mr. Stewart did not tell him to go, and he was driving about 40 miles an hour when the accident occurred, and he did not remember what he told Mr. Stewart about taking Price out. On redirect examination, he says:

"By Mr. Conrad: Q. Were your duties with this tool company such as that you could go on trips of this sort without any specific orders? A. I have—yes. Q. I say, did you do that regularly? A. I have done that lots of times—they didn't tell me where to go."

He stated he went to Duncan once on instructions, and he did not tell them he was going to Duncan, as they were not at the store. The doctor detailed his injuries, about which there seems to be no controversy. The manager of the tool company at Oklahoma City stated that the company had a branch office at Duncan and Mr. Iverson was at Duncan handling it. That he never knew of Phillips going out of town without telling the office, and he was not told to go to Duncan and there was no occasion for his going, and he had no business in Price's car that night.

There was a statement, introduced in evidence on cross-examination, of this witness, that he had made, not as his own statement, but as being a statement of Phillips and Price, to the effect that Phillips went along with Price in his car to assist in the sale of some bits to the Carter Oil Company, and that though he was not acting with specific orders, he was in the line of duty. It developed in the testimony that this was merely to assist Phillips. This witness later wrote a letter to Mr. Iverson contradictory of this statement.

The Mr. Iverson who was in Duncan stated he knew of no reason for Phillips going down to Duncan when he was there. The secretary of the tool company stated the territory of Phillips was at Oklahoma City.

The Commission found as follows:

"1. That on the 23rd day of August, 1930, the claimant was in the employment of the respondent and engaged in a hazardous occupation subject to and covered by

the provisions of the Workmen's Compensation Law, and that on said date said claimant sustained an accidental injury, arising out of and in the course of his employment, consisting of a compound, comminuted fracture of the left radius and ulna-compound comminuted fracture of left humerus. Fracture of small bones of left hand.

"2. That the average daily wage of the claimant at the time of said accidental injury was $175 per month.

"3. That by reason of said accidental injury the claimant has been temporarily totally disabled from the performance of ordinary manual labor from the date of the accident, August 23, 1930, up to April 27, 1931, and is still temporarily totally disabled from the performance of ordinary manual labor.

"Upon consideration of the foregoing facts, the Commission is of opinion that the claimant is entitled to $618, as temporary total disability, or 34 weeks' and two days' compensation at the rate of $18 per week, computed from August 23, 1930, to April 27, 1931, less the five-day waiting period, and that compensation should be continued at the rate of $18 per week until otherwise ordered by the Commission.

"It is therefore ordered, that within 15 days from this date the respondent or insurance carrier pay to the claimant herein the sum of $618 as temporary total disability computed from August 23, 1930, to April 27, 1931, and to continue paying compensation at the rate of $18 per week, until otherwise ordered by the Commission, and to pay all medical, hospital, and doctor bills incurred by reason of said accidental injury.

"It is further ordered: That within 30 days from this date the respondent or insurance carrier file with the Commission proper receipt or other proper reports evidencing compliance with the terms of this order."

Briefs have been filed and the position taken by the petitioners is that the award was not justified by the showing made. The claimant claims that it was justified, and the question here involved is whether or not the injury complained of is compensable under the facts that are admitted. It appears that the equipment that was furnished by the employer, a truck to travel in, was not in use at this time, and that Phillips was riding in Price's car, as he said, for the purpose of going home to demonstrate to the Carter Oil Company some bits he had there. His place of employment was at Oklahoma City. He was under the management and control of Mr. Stewart, and were it not for the statement that Stewart has made, there would be little, if anything,

to sustain the finding of the Commission in this case.

Paragraph 7 of section 13350, O. S. 1931, defines what injuries are provided for under the act. Paragraph 15 of the same section is as follows:

"15. Where several classes or kinds of work is performed, the Commission shall classify such employment, and the provisions of this act shall apply only to such employees as are engaged in manual or mechanical labor of a hazardous nature."

Taking the statements of the claimant for it, he was not sent there, his employer did not know he was going, he was not using the equipment furnished by the employer, but wanted to go home and took advantage of Price's going down to go with him, Price being under the influence of whisky, and the journey being made in the early hours of the Sabbath. Section 2564, O. S. 1931, is as follows:

"The following are the acts forbidden to be done on the first day of the week, the doing of any of which is Sabbath-breaking:

"First. Servile labor, except works of necessity or charity.

"Second. Trades, manufactures, and mechanical employment.

"Third. All shooting, horse racing, or gaming.

"Fourth. All manner of public selling, or offering, or exposing for sale publicly, of any commodities, except that meats, bread, and fish may be sold at any time before nine o'clock in the morning, and except that food and drink may be sold to be eaten and drunk upon the premises where sold, and drugs, medicines, milk, ice, and surgical appliances and burial supplies may be sold at any time of the day."

A great many cases have been decided on the proposition of when an employee is in the line of duty. The injury in this case occurred late at night, at a time when the employer had not directed him to go, and when he was not with the machinery and apparatus furnished for the purpose. The claimant abandoned the place that he was supposed to work, and was on a mission largely of pleasure. He was driving Price's car. One would scarcely contend that had the truck driver sought to hold the Iverson Tool Company liable for the collision, he would have succeeded on the ground that claimant, in driving the car, was the agent of the tool company.

While this court is bound by the findings of fact of the Industrial Commission, there

must be some evidence to show that the employer is responsible. It is certain that the evidence does not warrant the finding of the Commission as to the amount of the wages, though under· the Workmen's Compensation Law the amount of the wages proved in the case is large enough to justify the award, but the question arises as to whether or not the injury arose out of what the claimant was doing at the time in the line of his duty, as an employee of the tool company. We do not think that, under our Workmen's Compensation Law, an employer would be liable for an injury to an employee who had abandoned his place of work, and was on a mission of the kind that this evidence shows.

In a long line of cases, this court has held that, notwithstanding it will not weigh the evidence to ascertain whether or not the Commission's findings of fact are supported by it, under the provisions of the Workmen's Compensation Law, yet, it will look to the proposition to see if there is any evidence to support it, keeping in mind the duty of the claimant to show that the injury complained of was caused by an accidental injury arising out of and in the course of employment. One of the early cases on the subject, that has been followed, is the case of Cosmos Mining Co. v. State Ind. Comm., 101 Okla. 283, 225 P. 720, the first section of the syllabus of which is as follows:

"In a proceeding for the award of compensation under the Workmen's Compensation Act, the burden of proof is on the claimant to prove that the injury complained of was caused by an accidental injury arising out of and in the course of the employment, and where there is no evidence reasonably supporting the finding of the Industrial Commission that such injury was caused by an accident sustained by claimant, arising out of and in the course of the employment, the award is contrary to law and will be reversed by this court."

Taking all of the evidence in this case, and the circumstances showing that the claimant abandoned his place of work, and the tools with which he was to work, and the truck supplied for the work, and went on a mission of the kind he has detailed here himself, we do not think that the granting of compensation on this evidence is sustainable, or that the finding that the accident arose out of and in the course of employment is supported by the evidence, and, therefore, we hold the award is contrary to law, and should be reversed. Southern Surety Co. v. Cline, 149 Okla. 27, 299 P. 139.

The award is set aside and the case remanded to the Industrial Commission, with directions to proceed in accordance with the views herein expressed.

LESTER, C. J., and CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. CLARK, V. C. J., and RILEY and HEFNER, JJ., absent.