STATE, Appellant, v. GLENN C. WEATHERBY.—No. 38178.—168 S. W. (2d) 1048.

Court en Banc, February 24, 1943.

*Roy McKittrick,* Attorney General, *Covell R. Hewitt* and *Harry H. Kay,* Assistant Attorneys General, for appellant.

*G. C. Weatherby* for respondent, *pro se.*

TIPTON, J.—This is the second appeal in this case. The opinion in the first appeal is reported in 129 S. W. (2d) 887, 344 Mo. 848. In that appeal, we held it was unlawful for the respondent to be paid out of appropriations to the Legal Department for services rendered by respondent as special attorney for the Insurance Department; but we held that respondent did have a right of recoupment

if he could show a sufficient unexpended portion of the appropriation to the Insurance Department was transferred to the general revenue of the State, and he could have been legally paid for his services and expenses out of that appropriation.

At the retrial of this case, it was stipulated there was enough money out of the ▨▨▨ Insurance Department's appropriation for "personal service" in 1931 which was transferred to the general revenue of the State to pay respondent his fees and expenses.

The appellant admits the Appropriation Act for the Insurance Department is broad enough to permit respondent to be paid his expenses, but contends this Act is not broad enough to pay him attorney's fee.

▨▨ The appellant's contention is stated as follows: "The appropriation to the Insurance Department for the biennium of 1931-1932 for personal services was to pay 'salaries' of certain employees but contained no provision for payment of 'fees' to counsel for the Insurance Department."

Appellant contends the word "salary" could not include an attorney's fee, and relies upon the case State ex rel. Attorney General v. Speed, 81 S. W. 1260, 183 Mo. 186, l. c. 198, which holds that salary is regarded as a per-annum compensation, as applied to the facts of that case.

The Appropriation Act in question is found on Page 124, Laws of Missouri, 1931, and reads as follows:

"Sec. 15. Insurance department.—There is hereby appropriated out of the state treasury, chargeable to the insurance department fund, the sum of four hundred one thousand and twenty-two ($401,-022) dollars for the purpose of paying the salaries, wages and per diem of the officers and employees and other expenses of the insurance department, as follows:

"A. Personal Service: The salaries of the superintendent of insurance, deputy superintendent, chief clerk, chief examiner, actuary, counsel, chief rater, assistant actuary, assistant actuary (workmen's compensation), file clerk, revenue clerk, license clerk, stenographers, assistant policy clerk, securities clerk, other clerks, chief fire insurance examiner, 1 deputy at Kansas City, 1 deputy at St. Louis, 2 financial agents, St. Louis and Kansas City, 1 Hollerith operator, actuarial clerk, janitor, and other clerks, stenographers and attorneys; also temporary help consisting of special examiners and the payment of clerical help, per diem of examiners and attorneys' fees in connection with winding up, dissolving, or settling defunct companies whose assets are not sufficient to pay such expenses and other clerks, stenographers, and janitors .........................................$269,460."

It is to be noted that the appropriation for personal service is not limited to "salaries," but the Act says "salaries, *wages*, and per diem of officers and employees and other expenses of the Insurance Department." (Italics ours.)

We think respondent's fee would come within the meaning of "wages." The word "fee," as used in the respondent's contract of employment, would mean compensation for professional service. The word "wages" means "that which is pledged or paid for work or services." See Webster's International Dictionary, 2nd Edition.

The word "salaries," as used in the sentence following this phrase, includes "salaries, wages and per diem of the officers and employees and other expenses." It is a cardinal rule of construction when interpreting a statute the courts must give every word, phrase, and sentence a meaning, if possible.

So we hold the word "salaries," as used in that sentence, refers to the words and phrases "salaries, wages and per diem . . . and other expenses," found in the preceding paragraph. To hold otherwise, would be to ignore the words "wages" and "per diem" and the phrase "other expenses." Therefore, the sentence, "The salaries of the superintendent of insurance . . . and attorneys," would include attorneys' fees.

In so making this construction, we are not unmindful that appropriation acts must be strictly construed. Meyers v. Kansas City, 18 S. W. (2d) 900, 323 Mo. 200.

From what we have said, it follows that the judgment of the trial court must be affirmed. It is so ordered. *Hyde, Clark* and *Douglas, JJ.,* concur; *Ellison, C. J.,* dissents in separate opinion in which *Leedy, J.,* concurs; *Gantt, J.,* not sitting.

ELLISON, C. J. (dissenting)— Conceding, as the record does, that the respondent's services were valuable, I cannot agree the payments therefor were *wages,* such as would have been authorized by Laws Mo., 1931, pp. 124-5, and therefore dissent. The services were rendered by respondent while serving in three different capacities: (1) as "counsel" for the Insurance Department employed by the Insurance Superintendent under Sec. 5788, R. S. 1939, Mo. R. S. A., sec. 5788; (2) as "special counsel" employed by the Attorney General and the Insurance Superintendent by written contract, to represent them in extensive insurance rate litigation then pending in the Federal and State courts; (3) as Special Assistant Attorney General to write opinions for various departments of the State Government other than the Insurance Department. The money was paid to respondent out of an appropriation made to the *Legal* Department (Attorney General's Office) by Laws Mo., 1931, pp. 18-20.

The State's theory of recovery is that the money was illegally paid out of the Attorney General's appropriation because the services were not rendered to the Legal Department but to the *Insurance* Department, or at least while respondent was acting as counsel or special counsel for that Department. On a former appeal this contention was sustained in toto. State v. Weatherby, 344 Mo. 848, 859 et seq., 129 S. W. (2d) 887, 893 et seq. But the decision held respondent's de-

fense was in the nature of a common law recoupment; and that if he could show there was an outstanding appropriation to the Insurance Department available for the payment of the items when they were paid, he would be entitled to retain the money although it had been paid to him out of the wrong appropriation. On re-trial and this second appeal it is shown by stipulation that there was an outstanding appropriation to the Insurance Department at the time (Laws Mo., 1931, pp. 124-5) with an unexpended balance in it sufficient to pay the items. So the only question left is whether that appropriation *covers* the services and expenses.

The principal opinion sets out the first and second paragraph of the Act, the latter being paragraph A and covering "Personal Service." Then it rules the attorney fees paid respondent were *wages* within the meaning of the Act—though conceding legislative appropriation acts must be strictly construed, as is expressly required by Sec. 19, Article X of the Constitution, which says such acts "shall distinctly specify the sum appropriated, and the object to which it is to be applied." While loath to adopt any harsh construction of the law to defeat the claim of one who has rendered efficient service, yet we must recognize, on the other hand, that in cases such as this an unduly liberal construction will open the way to further inroads on public funds.

The first paragraph of this Insurance Department appropriation Act is general. It appropriates a total sum to the Department for the payment of: (1) "the salaries, wages and per diem of the officers and employees"; (2) "and other expenses of the insurance department." Then follow separate specific paragraphs breaking up the total appropriation into lesser sums severally for particular purposes. Of these one is Paragraph A for "Personal Service." The other paragraphs have no bearing on the issue here involved. The principal opinion points out that the first paragraph expressly covers "salaries, *wages and per diem*" of officers and employees, which is true; and then asserts paragraph A next following provides only for the payment of *salaries* to the officers and employees. Then the opinion reasons that the word salaries as thus used in paragraph A must be given a meaning broad enough to cover not only salaries in the ordinary sense, but also the "wages and per diem" mentioned in the first paragraph: for otherwise these latter words would be ignored and dropped out, thereby violating a cardinal rule of construction that every word in the two paragraphs must be given a meaning, if possible. Following this the conclusion is drawn that respondent's attorney fees are "wages" within the meaning of the section because both fees and wages are compensation.

I do not agree to this. It does not follow that fees are wages because both are compensation. But the first or main error in this reasoning is the premise that paragraph A on its face provides only for the payment of *salaries* to officers and employees. As a matter of fact

it goes much further than that. True, it starts out by specifying "salaries" of the Superintendent and a great number of other enumerated permanent officers and employees, including "attorneys." But then follows, after a semicolon: "also temporary help consisting of special examiners and the payment of clerical help, per diem of examiners and attorneys' fees in connection with (the liquidation of) defunct companies . . . and other clerks, stenographers, and janitors."

The fact that the opinion finds it logically necessary to classify respondent's attorney fees as "wages," itself is a concession that they were not "salary." But ▬▬▬ neither were they wages. Though the paragraph is loosely written, yet obviously the word salary was not intended to be carried clear through and applied to the pay of temporary employees. For it speaks of *"the payment"* of clerical help, and *"per diem* of examiners" (certainly a per diem could not be salary.) Then, recognizing attorney fees are not salaries or wages, it expressly provides for the payment of *attorneys' fees* in connection with the liquidation of defunct insurance companies. The only fair construction of the two paragraphs, it seems to me, is that it contemplates the payment: of salaries to permanent employees, including attorneys so employed; of a per diem to some employees; of wages to some temporary employees, such as janitors, for manual labor; and of attorney fees to attorneys specially employed in liquidating companies.

There is a pretty clear distinction between the ordinary meaning of the words "fee", "salary" and "wages". Fees are compensation for particular services, usually those rendered by professional men. Salary imports a contract for a specific sum to be paid periodically for services rendered, as by the year or month; and implies permanency of employment. Wages are compensation usually paid on a daily or weekly basis for labor of a manual or mechanical character. 16 Words & Phrases (Perm. Ed.), p. 320; State ex rel. Atty. Gen'l v. Speed, 183 Mo. 186, 198, 81 S. W. 1260, 1263. The distinction between the meanings of "fee", on the one hand, and "salary" or "wages" on the other, is clearer than that between the latter two. It was recognized in paragraph A of the appropriation act, supra, when the paragraph provided for the payment of *attorney fees* for particular services rendered in the liquidation of defunct insurance companies. But the Act made no provision for the payment of attorney fees for special services rendered in the rate litigation.

To show the character of the services rendered by respondent, for which his compensation is classified as wages in the principal opinion, let us look at his contract (set out in the record) which was made contemporaneously with his appointment as "counsel" of the Insurance Department under Sec. 5788, supra, on December 1, 1930. It recited that the Attorney General and Insurance Superintendent had appointed him as "special counsel" to represent them in the

extensive rate litigation then pending in the Federal and State courts. Then the first paragraph provided respondent "shall be paid from time to time out of appropriations made by the General Assembly . . . and available for the purpose, such sums on account of services rendered and to be rendered (also to cover expenses) as may be agreed upon by the parties."

The second paragraph of the contract bound the two state officers and their successors in office, "so far as they may do so under the law" to see that, upon the conclusion of the rate litigation, the respondent be paid by court allowance out of the funds impounded in that litigation. The third paragraph recited the payments made from appropriations under paragraph 1, should not be construed as a limitation on his right to be paid out of the impounded funds, though the former should be taken into consideration in fixing his total compensation. The fourth paragraph said that if at the end of the rate litigation there should be no impounded funds then the two state officers similarly bound themselves and their successors, so far as possible, to see that respondent "shall be paid a sum commensurate with the character of his services"; and to that end they further agreed "to urge upon the General Assembly . . . an appropriation sufficient for such purpose . . ."

To denominate the payments called for by this contract as either salary or wages, seems to the writer wholly .erroneous. No salary or scale of compensation was fixed. On the contrary it seems respondent did not want to have it fixed until it had been determined whether he could be paid out of the impounded funds. Clearly the compensation stipulated for was an attorney fee based on the value of the service. The payments made out of the Attorney General's appropriation were merely to apply on that fee. The agreed statement of facts admits they were so received by respondent. (Sec. XX.) They were not an independent fixed salary, nor were they stipulated wages. The reasons for the making of the contract are stated in State v. Weatherby, supra, 344 Mo. l. c. 853, 129 S. W. (2d) l. c. 889(1). It was because the Insurance Department was overburdened with attorneys. Respondent received $3900 of his pay and expenses from that Department in 1931 and 1932, and all of it thereafter. ▮▮▮ The Attorney General simply attempted to bridge the gap during those two years by advancing funds from his Department. If respondent was acting as "counsel" under Sec. 5788, supra, and not as "special counsel" under the contract, nevertheless he relied on the latter for his pay. In view of the foregoing undisputed facts I believe the Insurance Department Appropriation Act, supra, Laws Mo., 1931, pp. 124-5, did not cover the aforesaid services rendered by respondent for which he was paid out of the other appropriation (to the Legal Department).

*Leedy, J.*, concurs.