The Attorney General has received your request for an Opinion where you ask, in effect: Does the phrase "average monthly salary" as used in computing benefits payable from the Firemen's Pension Fund require, as a basis of calculation, inclusion of payments for accumulated sick leave, annual leave, longevity pay, clothing allowance, overtime pay and other such allowances? The provisions of 11 O.S. 49-101 [11-49-101] (1977), et seq., authorize the establishment of a Firemen's Relief and Pension Fund ("Fund"), the terms of which permit the payment of a monthly pension for eligible participants equal to a certain percentage of the "average monthly salary" paid for services during the last thirty (30) months of employment. 11 O.S. 49-106 [11-49-106] (1977). Your question concerns itself with the identification of those elements which may be included to compute the "average monthly salary." While no provision within the Pension Fund Act defines the term "average monthly salary," the sources of the Fund include monthly deductions from the salary of eligible fire department members, 11 O.S. 49-122 [11-49-122], together with the proceeds of a tax levied upon insurance premiums. Section 11 O.S. 49-119 [11-49-119]. The predecessor statute to 11 O.S. 49-106 [11-49-106] was codified as 11 O.S. 364 [11-364] (1971), as amended, and provided for a firemen's monthly pension "equal to one-half of the monthly salary attached to the rank which he may have held . . . proceeding the date of such retirement." In construing 364, the Supreme Court said in Board of Trustees v. Hicks, 161 Okl. 116, 17 P.2d 428
(1933): "So it can be seen that it was the intention of the Legislature to fix the amount of the pension at one-half of the salary attached to the rank preceding the date of such retirement. The right to the pension and the amount thereof is fixed on the basis of the salary drawn by the fireman preceding the date of his retirement and not on the salary drawn by a fireman in like position subsequent to date of retirement. "The act before us is plain and unambiguous. It provides that the pension shall be based on the salary attached to the rank held by the fireman immediately preceding his retirement. That fixes the basis and amount of the pension." 161 Okl. 119 See also City of Ardmore ex rel. Firemen's Relief and Pension Board v. Ozment, Okl., 467 P.2d 502 (1970). Our research has revealed no Oklahoma authority on the question of definition of "salary" as may be employed for pension computation purposes. Attempts to develop a general rule from the case authorities is not helpful because of the requirement to reconcile definitions of the "compensation" used by the several city ordinances and state statutes considered by the authorities, the terms of the several collective bargaining agreements, the method of funding the several pensions and the bases upon which the regularity of such additional payments are paid. We are not here dealing with contractual rights of firefighters but of statutory pension rights. One must, therefore, look to the statutes or authorizing legislation as the principle guideline. In that connection, we are mindful of several rules of statutory construction applicable to the question. The provisions of the Pension Fund statutes are to be liberally construed in favor of its beneficiaries. Ardmore v. Ozment, supra. The Pension Fund is not municipal property but a trust for the benefit of those to whom payments are finally made as a compensation for past services. Wallace v. Childers, 198 Okl. 604, 180 P.2d 1005
(1947). Where the Legislature has not defined terms used in a statute, a presumption exists that such words bear their ordinary and commonly accepted meanings. Stemmons, Inc. v. Universal C.I.T. Credit Corp., Okl., 301 P.2d 212
(1956). The term "salary," as defined by Webster's New Collegiate Dictionary (1976), means a "fixed compensation paid regularly for services" and refers to the synonym "wages." Blacks Law Dictionary (4th Ed.) defines the term as follows: "SALARY. A reward or recompense for services performed. "In a more limited sense a fixed periodical compensation paid for services rendered; a stated compensation, amounting to so much by the year, month, or other fixed period, to be paid to public officers and persons in some private employments, for the performance of official duties or the rendering of services of a particular kind, more or less definitely described, involving professional knowledge or skill, or at least employment above the grade of menial or mechanical labor. State v. Speed, 183 Mo. 186, 81 S.W. 1260. A fixed, annual, periodical amount payable for services and depending upon the time of employment and not the amount of services rendered. In re Information to Discipline Certain Attorneys of Sanitary Dist. of Chicago, 351 Ill. 206, 184 N.E. 332, 359. It is synonymous with "wages," except that "salary" is sometimes understood to relate to compensation for officials or other services, as distinguished from "wages," which is the compensation for labor. Walsh v. City of Bridgeport, 88 Conn. 528,91 A. 969, 972, Ann. Cas. 1917B, 318." See also People v. Fry,193 Mich. 476, 160 N.W. 467, 471 (1916); Mich. State Police Command Officers Ass'n, Inc. v. State, 80 Mich. 278,263 N.W.2d 47 (1978). The elements of "salary" for statutory pension purposes, cannot look to collective bargaining agreements or even to city ordinances for the identification of those emoluments which may be includable as salary. The payment of pensions is, in this instance, a matter of legislative policy, as is the eligibility of persons for pensions and the amount to be paid. State v. Police Pension Board, 56 Wis.2d 602, 203 N.W.2d 74
(1973); City of Duncan v. Bingham, Okl., 394 P.2d 456, 460
(1964); Board of Trustees v. Hicks, supra. Three elements appear to be required to ascertain "salary" for pension computation purposes: (1) a predetermined or fixed sum payable to a person holding a position, (2) payable at specified times for services rendered and (3) from which monthly deductions are made and contributed to the Pension Fund. The fundamental nature of "sick leave" is to permit salary continuation during periods of absence from the performance of services by reason of accident or injury. Sick leave is not an additional salary but a continuation of it. The fact that a municipality may choose to encourage attendance by reimbursement of unused sick leave does not permit a conclusion that such payments should be spread over a thirty (30) month period for salary averaging. Such a payment is not definable by amount but depends upon the health of an individual and can only be determined upon conclusion of services or retirement. See Michigan State Police Command Officers Ass'n, Inc. v. State, supra. Moreover, the payments for unused sick leave are not subject to monthly deductions as required by 49-122. The same reasoning is applicable to unused vacation time or annual leave. The determination of its amount is made after the fact, is not subject to a monthly deduction and depends upon the discretion of an individual firefighter of whether to take a vacation or payment in lieu of vacation. Clothing allowances, to the extent authorized by a municipality, do not constitute "salary" within the contemplation of the Pension Act. Such payments are in the nature of expense reimbursements incurred or contemplated to be incurred by a firefighter in clothing acquisition and maintenance required for job performance. Such is not payment for services rendered but expenses incurred by a firefighter in performing the service, much in the same category as personal automobile mileage reimbursement, lodging or meals. While the amount for clothing allowance may be predetermined as a matter of contract, the use of the term "salary," in its ordinary meaning, does not include payments for what constitute reimbursement of out-of-pocket expense. Banish v. City of Hamtramck, 9 Mich. App. 381, 157 N.W.2d 445 (1968). Compensation for overtime work is customarily regarded as something other than "salary," being in the nature of special compensation for extra work rather than a regular rate of compensation. State v. Riley, Del., 70 A.2d 712,713 (1949); State v. Board of Trustees, La. App., 294 So.2d 557
(1974). Overtime compensation customarily occurs at irregular and unplanned intervals and does not constitute a mandatory, continuing event. Where, however, a fire department has in force a department-wide policy where all employees, as a condition to employment, are required to work in excess of 40 hours per week and the regular salary does not reflect that requirement but, in lieu thereof, "overtime" is paid, such a circumstance may require the inclusion of the overtime for pension computation purposes. State v. Board of Trustees, supra. Whether such a circumstance exists, however, is a question of fact, not of law. Whether longevity pay is to be computed as "average monthly salary" is also a question of fact. Oklahoma's prior enactment, 11 O.S. 364 [11-364] (1971), tied pension payments to the salary of the "rank" held by the member at time of retirement. Accordingly, longevity does not appear to have been contemplated in 364. However, the current enactment, specifically 11 O.S. 49-106 [11-49-106], uses "average monthly salary" as the basis of computation. To the degree that the salary paid a person holding a position includes a predetermined increment recognizing length of service and monthly deductions are made therefrom for contribution to the Pension Fund, longevity pay is includable as "salary" for pension purposes. Kilfoil v. Johnson, Ind. App., 191 N.E.2d 321 (1963); Orban v. Allen, 143 Ind. App. 513, 241 N.E.2d 378 (1968). If, however, an increase, albeit described as a "longevity" increase, is conferred which does not operate to increase the salary structure for a position but, rather, operates as a "bonus" payable to an individual at irregular or unplanned intervals, such an increase may not be considered as salary. It is, therefore, the official opinion of the Attorney General: 1. By the term "salary," as used in computing the "average monthly salary" upon which pension payments are based under the provisions of 11 O.S. 49-106 [11-49-106] (1977), reference is made to a predetermined sum payable at specified and regular times for services rendered to a person holding a position and, from which sum, monthly deductions are made to the Firemen's Relief and Pension Fund. 2. Payments made to an eligible person, upon retirement, which represent compensation for unused and/or accumulated sick leave or vacation leave are not "salary" as that term is used in 11 O.S. 49-106 [11-49-106] (1977), irrespective that deductions are made or tendered to the Firemen's Relief and Pension Fund. 3. Payments for uniform or clothing acquisition or maintenance and other allowances received by a participant in the Firemen's Relief and Pension Fund are not "salary" as that term is used in 11 O.S. 49-106 [11-49-106] (1977) but, rather, constitute reimbursement for expenses incurred or contemplated in the performance of service, irrespective that monthly deductions from such payments are made or tendered to the Pension Fund. 4. Compensation paid for extra work or overtime service is customarily not "salary" as that term is used in 11 O.S. 49-106 [11-49-106] (1977), irrespective that monthly deductions are made or tendered to the Firemen's Relief and Pension Fund. 5. To the degree that the salary paid for a position held by an eligible participant in the Firemen's Relief and Pension Fund also includes a predetermined increment recognizing length of service for that position and monthly deductions are made to the Pension Fund, such increments in the nature of longevity payments are includable as "salary" within the provisions of 11 O.S. 49-106 [11-49-106] (1977). Whether a particular form of compensation for longevity is includable as "salary" is a question of fact. (Manville T. Buford)