THE STATE ex rel. D. C. KESSLER et al., Members of State Board of Examiners for Barbers, v. GEORGE E. HACKMANN, State Auditor.

In Banc July 3, 1924.

1. **MANDAMUS: Demurrer.** In mandamus, where respondent filed a demurrer to the petition, the questions for determination are presented by the allegations of the petition.

2. **BARBERS FUND: Expenses of Board: Payment Without Appropriation.** The Act of 1921, Laws 1921, p. 157, creating a fund for the Board of Examiners of Barbers, and declaring that all moneys collected by the board shall be paid into the State Treasury, "There

to constitute a fund for the purpose of carrying out the provisions of this act," and directing the State Auditor to issue his warrants upon the State Treasurer, payable "out of this fund only," for the salaries and expenses of the board, does not authorize the payment of such expenses until there is first an appropriation by the Legislature, out of said fund, for their payment. The language of the Constitution is unequivocal; it requires an appropriation by the Legislature before money received by the State "from any source whatever" can be paid out.

Headnote 1:  Mandamus, 26 Cyc. 464.  Headnote 2:  States, 36 Cyc. 890.

## Mandamus.

PEREMPTORY WRIT DENIED.

*W. C. Irwin* and *Curtis Dunn* for relator.

A search of the laws reveals the fact that no appropriation has ever been made by the General Assembly for the support of a State Barber's Board, and no appropriation was made by the 51st General Assembly which enacted this law.  The absence of an appropriation since the enactment of the law clearly indicated the interpretation which the Legislature placed upon the provisions of Section 4 of the act.  (1)  In Ex parte Lucas, 160 Mo. 218, the constitutionality of the barbers' law was at issue and one of the questions raised was that the law provided that the money collected should remain in the hands of the treasurer of the board without being paid into the State Treasury.  In answering this proposition the court said:  "The contention is not well founded, for the simple reason that Section 43 of Article IV applies only to money provided for and received by the State.  The money authorized to be collected under this act is not state revenue, but is simply a provision to make the Board of Examiners self-supporting."  (2)  The right of the General Assembly to create a special fund

from moneys arising from a peculiar source was upheld in State ex rel. Fath v. Henderson, 160 Mo. 190. In State ex rel. v. Wilder, 199 Mo. 470, the court passed upon the same question involved in this case. Under the authority of the case just cited the fund created from the collection of license fees by the State Barbers Board is in no sense of the term public money, and for that reason it would not come within the purview of the Constitution, which requires an appropriation, because the makers of the Constitution had in mind only the appropriation. (3) This court has held that deductions from public revenue may be made by the collecting officers before the delivery of the fund to the State Treasurer and that officers may deduct their compensation in advance of payment of the State Treasurer, as in case of county collectors and in the collection of collateral inheritance taxes. The reason assigned for this ruling of the court is based upon the theory that the fund has not become a public fund and for the reason that the Legislature has long recognized this mode of payment, and for the further reason that it was not in force at the time of the adoption of the Constitution of 1875. State ex rel. Curators of University v. Walker, 240 Mo. 708. (4) Constitutional provisions are always to be interpreted in the light of their historical setting, and the evil which their restrictions and inhibitions on legislative power were intended to prohibit may be ascertained by considering the long public policy of the State, as manifested by its statutes. State ex rel. v. William Jewell College, 234 Mo. 313; Hale v. Stimson, 198 Mo. 159; State ex inf. v. Breuer, 235 Mo. 248.

*Jesse W. Barrett,* Attorney-General, and *Robert W. Otto,* Assistant Attorney-General, for respondent.

(1) Section 43 of Article IV of the Constitution provides, among other things, that "moneys received by the State from any source whatsoever shall go into the

treasury, and the General Assembly shall have no power
. . . to permit money to be drawn from the treasury
except in pursuance of regular appropriations made by
law." Mo. Constitution, art. 10, sec. 19; State ex rel. v.
Henderson, 160 Mo. 190; State ex rel. v. Gordon, 236 Mo.
142. (2) If Section 4 of the 1921 Act, relied on by re-
lator, be accepted as a continuing and standing appro-
priation, it would be unconstitutional for the reason that
the Constitution provides for the making of regular ap-
propriations biennially for the disbursement of funds
in the State Treasury, and forbids the payment of such
moneys, unless the warrant therefor is issued within two
years after the passage of such appropriation act. Mo.
Constitution, art. 10, sec. 19.

WHITE, J.—Original mandamus proceeding by the
State Board of Examiners for Barbers, to compel the
State Auditor to audit an account of the board. The
issuance of the alternative writ was waived by re-
spondent, who filed a demurrer to the petition. Thus
the questions for determination here are presented in
the allegations of the petition for the writ.

The petition, after reciting the official status of the
members of the board and their duties prescribed by
law, states that on the first day of December, 1923, the
board made out and certified to the State Auditor, re-
spondent, a detailed statement of expenses incurred by
the board during the month of November, 1923, re-
questing said State Auditor to issue a warrant for the
payment of said accounts out of the funds in the hands
of the State Treasurer, arising from fees collected by
the board under the statute providing for the same; that
respondent refused, and still refuses, to issue a warrant
in payment of the accounts.

I. The relators base their right to a peremptory
writ upon the provisions of the Act of 1921, Section 4,
Laws 1921, page 157, which is as follows:

"Sec. 4. *Compensation of members of board—shall file report with Auditor.* The remuneration of each member shall not exceed the sum of five dollars per day while engaged in their duties as such, exclusive of the necessary traveling and other expenses; to which they shall also be entitled: Provided, however, that all moneys collected by the board or its treasurer shall be paid into the State Treasury, there to constitute a fund for the purpose of carrying out the provisions of this act. The State Auditor is hereby directed to issue his warrants monthly, upon the State Treasurer out of this fund only, for the payment of the salaries, office and all other necessary expenses of said board. A detailed statement of the expenses incurred by the board, approved by the secretary of said board, shall be filed with the State Auditor before warrants are drawn for the payment of same by the State Auditor, and any surplus remaining in said fund annually' after payments above authorized shall be paid into the public school fund of this State."

The relators call attention to the provision of that section which creates, out of the fees collected by the board, a fund for carrying out the provisions of the act, with directions to the State Auditor to issue warrants monthly to the State Treasurer for salaries and other expenses of the board to be paid out of that fund. It is claimed that the Auditor must issue warrants for such expenses on accounts properly presented, without a special appropriation by the Legislature for the purpose.

The argument is that the fund created by the Legislature is in no sense a public fund, at least not available for any general purpose; that it cannot be appropriated for any other purpose than the payment of the salaries and expenses incurred by the board, until all that expense is met; then the balance may be paid into the school fund. Since that is the case, a special appropriation by the Legislature setting apart the fund, or any part of it, for the purpose mentioned would be entirely superfluous.

The relators give a history of the legislation relating to the Board of Examiners for Barbers, showing that before the Act of 1921 the moneys collected by the board were not paid into the State Treasury. There was no way to keep track of the money which the board received and disbursed; the reason for having the money paid into the State Treasury was that a check might be kept upon the receipts and disbursements. The relators, no doubt, are correct in that reasoning as to the purpose of the act.

II. Section 43, Article 4, of the Constitution begins with this provision:

"All revenue collected and moneys received by the State from *any source whatsoever shall go into the treasury,* and the General Asssembly shall have no power to divert the same, or to permit the money to be drawn from the treasury, except in pursuance of regular appropriations made by law."

Section 19, Article X, of the State Constitution, provides: "No moneys shall ever be paid out of the treasury of this State, *or any of the funds under its management,* except in pursuance of an appropriation by law."

Relators cite the case of State ex rel. v. Wilder, where this court had under consideration funds of the Insurance Department, to show that the money in the Insurance Department was not public money in a sense that it was subject to be appropriated for any general purpose. That was a mandamus proceeding seeking to compel the State Auditor to issue a warrant in payment of an account incurred by the Insurance Department. In that case, however, there was an appropriation by act of the Legislature.

On the other hand, this court has held that a fund, raised by an act for a special purpose, could not be paid out of the State Treasury except upon an appropriation by an act of the Legislature. [State ex rel. Fath v. Henderson, 160 Mo. 190, l. c. 214; State ex rel. v. Gordon, 236

Mo. 142, 1. c. 158.] In the case last cited the court had under consideration a fund for the support and maintenance of the Game Department. It was held that the creation of a special fund is not a continuing appropriation of the fund, or of any part of it, to pay accounts drawn against it. That the creation of the fund is one thing, and the appropriation of money to pay accounts against the fund is quite another thing. The language of the Constitution is unequivocal; it requires an appropriation before payment of money received by the State *"from any source whatsoever,"* The money collected by the board is received by the State; it goes into the State Treasury. To make it more specific, the requirement that an appropriation by the Legislature will be necessary before money can be paid out of the treasury of the State, it is applied, not only to state funds, but to *"any of the funds under its management."*

It is manifest that the intention of the Legislature in placing the funds in the hands of the State Treasurer was not only to provide official information as to its disbursement, but to keep the expenses of the department within the limits provided by the Legislature. The Legislature may be presumed to have had the constitutional restrictions in mind when they passed the act creating the fund.

The peremptory writ is denied. All concur, except *Woodson, J.,* who dissents.