STATE of Missouri, ex rel. the Honorable Joseph P. TEASDALE, Governor of the State of Missouri

and

Stephen C. Bradford, Commissioner, Office of Administration, State of Missouri, Relators,

v.

The Honorable James I. SPAINHOWER, Treasurer of the State of Missouri, Respondent.

No. 61303.

Supreme Court of Missouri, En Banc.

May 2, 1979.

John D. Ashcroft, Atty. Gen., Preston Dean, Ann Covington, Asst. Attys. Gen., Jefferson City, for respondent.

Rexford H. Caruthers, Thomas E. Tueth, Mark D. Mittleman, St. Louis, amicus curiae, for Board of Education of City of St. Louis.

Gene J. Boesch, Counsel to Governor, Henry F. Luepke, Jr., Steven A. Muchnick, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, for relators.

PER CURIAM:

This is an original proceeding in mandamus wherein relators, the Governor of the State of Missouri, Joseph P. Teasdale, and Stephen C. Bradford, Commissioner of Ad-

ministration seek to compel the respondent, James I. Spainhower, State Treasurer, to withdraw a stop payment order on a check issued to the St. Louis Board of Education in the amount of $1,343,066.34. We have jurisdiction, Mo.Const. art. IV, § 4.

The facts were stipulated to by the parties. For many years prior to July 1, 1978, the St. Louis School Board of Education operated Harris-Stowe College in the City of St. Louis. Harris-Stowe is a four year college operating in the City of St. Louis and specializes in the education and training of teachers. In 1963, §§ 163.171 and 163.181, RSMo were enacted, under the terms of which at the end of each fiscal year the State reimbursed the Board for expenditures made in connection with the operation of Harris-Stowe during that fiscal year. Such reimbursement was paid in an amount as determined by a formula set out in the statutes.

In the second regular session of the 79th General Assembly, C.C.S.H.B. No. 1003 was passed and signed by the Governor. Section 3.060 thereof appropriated to the Department of Higher Education $1,775,000 to provide teacher training courses in all cities having 75,000 or more population maintaining a city teacher training school, "providing that in the event [sic] the funds appropriated herein shall in no event exceed 70% of the total actual operating expenditures of any such school." (Harris-Stowe is the only such school in the State).

In the same session, S.B. 703 was passed and signed by the Governor on May 31, 1978. S.B. 703 is now set out as §§ 174.300, 174.310, 174.320, 1 Vernon's Missouri Legislative Service 144–45 (1978). Section 1 of S.B. 703, repealed §§ 163.171 and 178.410, RSMo 1969 and § 163.181, RSMo Supp.1977. S.B. 703 became effective August 13, 1978.

From July 1, 1978, the St. Louis Board of Education has continued, as it did during the prior fiscal years, to operate and staff Harris-Stowe and to provide Harris-Stowe with all supportive services including financial, payroll, auditing, accounting, purchasing, legal, data processing and other services. From July 1, 1978, to the present controversy, the Board has paid out of its funds all other expenses in connection with and for the operation of Harris-Stowe.

Pursuant to S.B. 703, a Board of Regents of Harris-Stowe was appointed in October 1978. As of the time of this proceeding, the campus, building, real estate, furniture, fixtures and other property are still owned by the Board of Education and have not, as yet, been conveyed by the Board to the Board of Regents. The stipulation states that "[t]he Board of Regents of Harris has not, as yet taken over the operation of Harris."

On October 10, 1978, the Board of Education forwarded a letter to the Commissioner of Higher Education requesting the $1,775,-000 under the provisions of C.C.S.H.B. 1003. The letter indicated that since the appropriation cannot exceed 70%, a copy of the budget was also forwarded.

On March 12, 1979, the School Board prepared and forwarded an invoice to the State of Missouri for an amount of $1,343,066.34 which was the amount of expenses which the Board had incurred and paid for the period July 1, 1978 through February 28, 1979 for the staffing and operation of Harris-Stowe.

On March 13, 1979, a special warrant request was submitted by the Department of Higher Education through Mr. Bruce Robertson, Director of Higher Education. The special warrant request was for payment of $1,343,066.34 to the St. Louis School Board.

The Director of Administration approved the special warrant request for payment and prepared a warrant dated March 13, 1979 payable to the St. Louis School Board in the amount of $1,343,066.34. The warrant was signed by Commissioner Bradford and by the respondent as Treasurer. By said signatures on the warrant, the warrant was converted into a check drawn on a depository of state funds for payment to the School Board. On March 13, the check was delivered to the Board and deposited in its account.

On March 15, 1979, the respondent caused a document to be delivered to the depository whereby he ordered the depository bank to stop payment on the check.

On March 16, relator, Governor, called upon the respondent to withdraw the stop order, but the respondent refused to do so.

On March 19, 1979, relators, Governor and the Commissioner of the Office of Administration filed their petition in mandamus in this court. We issued our alternative writ. The cause was briefed by the parties, the Board of Education filed an amicus brief and the case was argued April 9, 1979.

Respondent contends that:

(1) There is no statutory authority for the St. Louis Board of Education to operate Harris-Stowe and provide funding therefor or to make payments to Harris-Stowe (the statutory authority having been repealed) because there is no valid appropriation from which to reimburse the Board; and (2) The payment to the Board is "inappropriate" because C.C.S.H.B. 1003, § 3.060 states that the payment made by the State shall not exceed 70% of the total operating expenditures of Harris-Stowe for the fiscal year and that to insure that the payment does not exceed 70% it would be appropriate to wait until the operating expenditures for fiscal 1978–1979 are all known.

In effect the respondent's contention is that since S.B. 703 repealed §§ 163.171 and 178.410, RSMo 1969 and § 163.181, RSMo Supp.1977, there is no statutory authorization for the Board of Education to operate Harris-Stowe, to pay out funds to the college and to be reimbursed for expenditures so that the appropriation is invalid.

Respondent argues that S.B. 703 repealed §§ 163.171, 178.410 and 163.181 which authorized the Board to operate Harris-Stowe and provide funding and then obtain reimbursement according to the formula contained in the statutes. By the repeal of these sections and the passage and adoption of S.B. 703, establishing a Board of Regents, respondent contends that "there is absolutely no authority for the Board to operate Harris-Stowe." "Apparently the Board has continued to provide funding and now expects reimbursement. . . . Respondent submits that, because there is no statutory authority for the funds, the funding was gratuitous and cannot be reimbursed under the present litigation."

We disagree. S.B. 703 is a comprehensive statute dealing with the State take-over of Harris-Stowe College. It provides that, the State shall, effective July 1, 1978 provide the necessary funds to fully staff and operate Harris-Stowe College. S.B. 703 provides that prior to October 17, 1978, the Governor shall, with the advice and consent of the senate, appoint a six member board of regents to assume the general control and management of Harris-Stowe. This bill provides that "[t]here shall be a period of orderly transition which shall begin with the appointment of the board of regents, during which the St. Louis Board of Education shall convey by gift . . . ." the property of the college and during which the Board shall continue to provide necessary "supporting services" to the college at its own expense. The law provides that the transition period shall terminate no later than July 1, 1979, at which time the regents shall be responsible for every aspect of the college's operation.

Although S.B. 703 formally repeals §§ 163.171, 178.410 and 163.181, it does not follow that the Board of Education does not have authority to operate Harris-Stowe during the transition period, nor does it mean that the Board may not pay out its funds to operate the college or receive reimbursement. The Senate Bill implies otherwise.

Clearly implied in this statute, not only from the wording thereof but from the practicalities of the situation, is that during the time of the transition period until July 1, 1979, the St. Louis Board of Education has the power, right and duty to operate Harris-Stowe. The Board has operated Harris-Stowe since 1857. Senate Bill 703 does not contemplate the closing or shutting down of the college during the transition period and does not contemplate the closing

of the school either prior to or after the appointment of the Board of Regents. The General Assembly by adopting S.B. 703, did not contemplate the closing of the school but provided for an "orderly transition" period until the Board of Regents could be responsible for every "aspect" of the college's operation. Surely the General Assembly did not by the adoption of S.B. 703 relegate Harris-Stowe to a legal limbo during the transition period. Hence, the logical and authorized entity to operate Harris-Stowe during the transition period must be and is the St. Louis Board of Education which operated the college for so many prior years. Since the legislation provides for a transition period before the Board of Regents becomes responsible for every aspect of the operation of Harris-Stowe, the only authorized and legal entity to operate Harris-Stowe is the St. Louis Board of Education. Hence, the Board having such legal authority, the appropriation of $1,775,000 was a valid appropriation for reimbursement of expenses incurred by the St. Louis Board of Education in the operation of Harris-Stowe and the Board is the proper payee of a check for reimbursement.

Respondent contends that since C.C.S.H.B. 1003, § 3.060 places a limitation of 70% of the total actual operating expenditures of Harris-Stowe, the expenditure is unauthorized until it is determined at the end of the fiscal year that the expenditure is within the limitation of the appropriation. We do not agree. The Governor, under the authority of Mo.Const. art. IV, § 27, has the power to control the rate at which an appropriation is expended during the period of appropriation. S.B. 703 does not, like the earlier statutes, provide for funding at the end of the fiscal year. However, the 70% limitation can and must be complied with, and the special warrant request and the check are infirm in this regard.

Section 3.060 of C.C.S.H.B. 1003 specifies that the appropriation to the Department of Higher Education for Harris-Stowe College shall not exceed "70% of the total *actual operating expenditures*" (emphasis added) of that school. This court has

carefully guarded the constitutional command not to spend the people's money in a manner other than authorized by an appropriation law. *See, e. g., State ex rel. Gibson v. Grimm,* 540 S.W.2d 17 (Mo. banc 1976), *cert. denied,* 430 U.S. 930, 97 S.Ct. 1548, 51 L.Ed.2d 773 (1977); *State ex rel. McKinley Pub. Co. v. Hackmann,* 314 Mo. 33, 282 S.W. 1007 (banc 1926); *State ex rel. Kessler v. Hackmann,* 304 Mo. 453, 264 S.W. 366 (1924). More particularly it has long been the law of this State that appropriation acts must be strictly construed. *State v. Weatherby,* 350 Mo. 741, 168 S.W.2d 1048 (banc 1943); *Meyers v. Kansas City,* 323 Mo. 200, 18 S.W.2d 900 (banc 1929). Compliance with the law is of course required to assure the integrity of the appropriation process. Under the controlling appropriation act under consideration, the Department of Higher Education was permitted to request only 70% of the "actual operating expenditures." It stands admitted that the "actual operating expenditures" for which reimbursement was requested in this litigation was $1,343,-066.34. The amount of $940,146.44 (70% of $1,343,066.34) could have been properly paid at the time of the original certification.

In *State ex rel. Cranfill v. Smith,* 330 Mo. 252, 256, 48 S.W.2d 891, 892–93 (banc 1932), this court said:

"Mandamus is not a writ of right. Its issuance lies in the sound judicial discretion of the court. Before granting the writ the court will look to the public interest which may be concerned, and act in view of all the existing facts and with due regard to the consequences."

We conclude that there are no prohibitions, either constitutional or statutory, which prohibit the funds appropriated by C.C.S.H.B. 1003, § 3.060, from being paid in installments provided only that the amounts paid by the State shall not exceed 70% of actual expenditures made for the operation of Harris-Stowe College and provided further that total State payments shall not exceed the amount appropriated by the Legislature.

The amount in dispute, represented by the original check for $1,343,066.34, on Motion of the Treasurer was ordered deposited

by the Treasurer in a special trust account to bear interest and to be held by the Treasurer subject to further order of this court.

The Treasurer is ordered to terminate and dissolve the trust created pursuant to order of this court dated March 26, 1979 and to redeposit the principal and all accrued interest to the appropriate account of the Treasury of the State of Missouri.

At the end of any convenient fiscal period during fiscal 1978–1979, the St. Louis Board of Education is entitled to 70% of any sums expended during said period for the operation of Harris-Stowe College and, upon certification of a request in the same manner as the original request herein was certified, the same should be paid provided only that payments made by the State shall in no event exceed the total sum of $1,775,000, the amount appropriated by C.C.S.H.B. 1003, § 3.060.

The alternative writ of mandamus is quashed.

The court, at the instance of the parties, considered this case a matter of urgency. Hence, the rules are suspended and any motion for rehearing shall be filed on or before noon, Monday, May 7, 1979.

All concur.